**S & B TRANSPORTATION, INC. and L.A.M. Truck Brokers, Plaintiffs,**

v.

**ALLOU DISTRIBUTORS, INC., Transworld Grocers and Chesapeake Distributors, Inc., Defendants.**

No. CV–97–4629 (ETB).

United States District Court, E.D. New York.

March 30, 1999.

Edward Walter Land, New York City, for plaintiffs.

Martin Rosen, for defendants.

### ORDER AND MEMORANDUM OPINION

BOYLE, United States Magistrate Judge.

### FACTS

This is an action by the broker plaintiff, L.A.M. Truck Brokers ("LAM,")[1], against the shipper defendants, Allou Distributors, Inc., and its divisions, Transworld Grocers ("Transworld") and Chesapeake Distributors, Inc. ("Chesapeake") (collectively "Allou") to recover unpaid transportation brokerage charges under the Interstate Commerce Act, 49 U.S.C. § 13706 (the "Act") for brokerage services rendered by the plaintiff to the defendants. *Amended Complaint,* dated November 25, 1997, ¶ 6 (original complaint filed on August 11, 1997). Allou claims that the money allegedly owed to the plaintiff represents deductions, properly taken, for goods lost or damaged during the brokered shipments. *Answer,* dated December 18, 1997.

LAM is a federally licensed transportation broker. *Affidavit of Lee Anne Black,* dated March 18, 1998, ¶ 3 (hereinafter

1. S & B Transportation, Inc. ("S & B"), also a licensed transportation broker, withdrew its claim in February, 1998. *Affirmation of Ed-* *ward Land,* dated August 13, 1998, ¶ 1 n. 1 (hereinafter "Land Aff.").

"Black Aff."). A transportation broker acts as an intermediary from the shipper and remitting the charges to the carrier. *Black Aff.*, ¶ 5. The broker charges the shipper a commission in exchange for its services. *Black Aff.*, ¶ 4. Allou is a distributor of cosmetics, pharmaceuticals, and other health-related products. *Affidavit of David Shamilzadeh*, dated September 1, 1998, ¶ 1 (hereinafter "Shamilzadeh Aff."). It is Allou's practice to use transportation brokers to find responsible motor carriers and to submit claims to those carriers on its behalf if any merchandise is lost or damaged during shipment. *Shamilzadeh Aff.*, at ¶ 3.

From May, 1995 to July or August, 1996, LAM brokered 102 shipments on behalf of Allou using various motor carriers. *Black Aff.*, ¶ 8; *Land Aff.*, ¶ 24. LAM claims that Allou failed to remit full payment on approximately eighty of these shipments and now makes claim for a total of $18,548.00 in unpaid brokerage charges. *Land Aff.*, ¶ 5. Allou claims that, according to the custom of the industry and its own business practices, a shipper will routinely deduct amounts from broker invoices for the value of goods lost or damaged during that particular shipment. *Shamilzadeh Aff.*, at ¶ 3. LAM's president, Lee Anne Black ("Black"), testified at a deposition that if she received a short payment on an invoice she would contact Allou. *Deposition of Lee Anne Black*, dated March 24, 1998, at 35–36 (hereinafter "Black Depo."). She further testified that she was either told that a particular shipment was short or damaged; or, if the Allou employee had no knowledge regarding that shipment, that she would be contacted by an employee who knew why the deduction was taken. *Black Depo.*, at 35–45. Black testified that it was the custom of the industry and her business practice to give shippers thirty days in which to file claims with LAM for goods lost or damaged during shipment. *Black Depo.*, at 36–38. She stated that this policy enabled her to make timely claims to the carriers on behalf of the shippers. *Black Depo.*, at 36. Black also

testified, however, that she instructed Allou to file claims directly with the carrier and that they failed to do so. *Black Depo.*, at 52. Black remembers receiving three written claims from Transworld which she filed with the appropriate carrier. *Black Depo.*, at 55. LAM also claims that a number of Allou's loss or damage deductions were made on sealed shipments which LAM claims is impossible. *Black Depo.*, at 57–58. It is undisputed that Allou, from the beginning of its relationship with LAM, regularly deducted amounts for lost or damaged goods when paying LAM invoices. It is also undisputed that LAM continued to broker shipments for Allou, for over a year, in spite of the short payments.

LAM now moves this court, under Rule 56 of the Federal Rules of Civil Procedure, for summary judgment as to its claim against Allou. LAM asserts that it is entitled to judgment as a matter of law on its claim for the unpaid brokerage fees because, under the Act, a shipper is strictly liable to a transportation broker for full payment of services. *Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment*, dated August 14, 1998, at 11 (hereinafter "Pl.Mem."). Allou cross-moves for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. *Defendant's Memorandum of Law in Support of its Motion to Dismiss and its Opposition to Plaintiff's Motion*, dated September 11, 1998, at 3 (hereinafter "Def.Mem."). Allou also opposes LAM's motion for summary judgment by asserting that LAM impeded its ability to file claims with the appropriate carriers by withholding their names, addresses and phone numbers, and that there is a disputed issue of material fact as to whether and how LAM was obligated to file claims for loss or damage on Allou's behalf. *Def. Mem.*, at 5.

### DISCUSSION

Allou has cross-moved this court, pursuant to Fed.R.Civ.P. 12(b)(1) for dismissal

of plaintiff's cause of action for lack of subject matter jurisdiction. Allou asserts that the Act cannot be the basis for federal subject matter jurisdiction for what it claims is a private contractual dispute between the parties. LAM argues that this dispute arises out of the provisions of the Act and that therefore there is federal subject matter jurisdiction.

The Interstate Commerce Act requires motor common carriers to publish their rates in tariffs filed with the Interstate Commerce Commission ("ICC"). 49 U.S.C. § 13702 (West 1998). The historical purpose of the Interstate Commerce Act was "to achieve uniformity in freight transportation charges, and thereby to eliminate the discrimination and favoritism that had plagued the railroad industry in the late 19th century." *Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 344, 102 S.Ct. 1815, 1821, 72 L.Ed.2d 114 (1982) (citing Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 361, 64 S.Ct. 128, 130, 88 L.Ed. 96 (1943); New York, N.H. & H.R. Co. v. ICC, 200 U.S. 361, 391, 26 S.Ct. 272, 276, 50 L.Ed. 515, (1906)). One of the Act's primary purposes is to "secure the making public of rates to intending shippers." *New York Cent. & H.R.R. Co. v. United States*, 166 F. 267, 269–270 (2d Cir.1908).

■ Both carriers and shippers are prohibited from deviating from the rates filed with the ICC. *See Maislin Indus. v. Primary Steel*, 497 U.S. 116, 119, 110 S.Ct. 2759, 2762, 111 L.Ed.2d 94 (1990) (motor common carriers must file their rates with the ICC, and both carriers and shippers must adhere to these rates). Any action between carriers and shippers arising from the filed rate is governed exclusively by federal law. *See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983) (federal question jurisdiction exists over a carrier's suit to collect unpaid freight charges). The courts have long understood that "the filed rate governs the legal relationship between shipper and carrier." *Id.* at 126, 110 S.Ct. at 2765. This is the so-called "filed rate doctrine."

■ It is uncontested that LAM is a transportation broker, licensed by the ICC. A broker is a person:

> other than a motor carrier or employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2). Under the filed-rate doctrine when a licensed broker arranges for transportation, the broker is liable to the carrier for paying the appropriate rate on behalf of the shipper. 49 U.S.C. § 13702(a) ("The carrier may not charge or receive a different compensation for the transportation or service than the rate specified in the tariff").

■ LAM cites the court to 49 U.S.C. § 13706 as the basis for federal subject matter jurisdiction. That section addresses liability for payment of filed rates in actions involving a consignee (§ 13706(a)) or beneficial owner (§ 13706(b)).[2] Neither

---

**2.** 49 U.S.C. § 13706(a) in relevant part states: When the shipper or consignor instructs the carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery ... but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery ...

(1) of the agency and absence of beneficial title; and

(2) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading....
49 U.S.C. § 13706(b) is a correlative provision which, in relevant part, states:
The beneficial owner is liable for all rates when the property is reconsigned or diverted by an agent but is refused or abandoned at its ultimate destination if the agent gave the carrier in the reconsignment or diversion order a

provision makes any reference to the independent brokerage contract involved here between a broker and a shipper. LAM does not cite this court to any other provision of the Act which might confer federal subject matter jurisdiction and none can be found.

 It is a fundamental precept that the United States District Courts "have only such jurisdiction as is conferred upon them by Congress." *Baker v. Riss & Co.,* 444 F.2d 257, 259 (8th Cir.1971). It is true that contracts relating to the applicable tariff between a broker and a carrier "may be subject to federal regulation" by the ICC. *Servicemaster v. FTR Transport, Inc.,* 868 F.Supp. 90, 95 (E.D.Pa.1994) (action by shipper against a broker for alleged overages dismissed for lack of subject matter jurisdiction). Examples of this liability are found where a move is made by a common or contract carrier where the broker is liable to the carrier for the filed rate. *Id.* The case here, however, involves solely shipper liability to a broker for commissions allegedly due and owing. The claims here vary from $9.00 to amounts less than $10,000.00. While LAM argues that the Act's "comprehensive statutory scheme expressly contemplates that transportation brokers are an integral part of interstate transportation," *Pl.Mem.,* at 8, this argument is insufficient to establish federal subject matter jurisdiction. While there is a paucity of law on this subject, the only court that has considered this issue has concluded that "contracts between the broker and the shipper are not subject to federal regulation." *Servicemaster,* 868 F.Supp. at 95. The brokerage agreement rates "are not regulated" by the ICC, and the court therefore concludes that LAM's claim for brokerage commissions does not arise under federal law and therefore should be dismissed for lack of

federal subject matter jurisdiction. This result is also consistent with the express Congressional intent set forth at 28 U.S.C. § 1337(a). This provision limits access to the district court to controversies in excess of $10,000.00 for "each receipt or bill of lading" in actions involving loss or injury to property where federal subject matter jurisdiction exists under 49 U.S.C. § 11706 (rail carrier liability) and § 14706 (motor carrier liability).[3]

Moreover, because the amount in controversy for the aggregate claims is $18,548.00, LAM is unable to make a threshold showing of a controversy of $75,000.00 to establish diversity jurisdiction. 28 U.S.C. § 1332. The action therefore must be dismissed and the remaining arguments of the parties need not be addressed.

### CONCLUSION

Plaintiff's motion for summary judgment is hereby denied. Defendant's motion to dismiss for lack of subject matter jurisdiction is hereby granted. The action is dismissed.

SO ORDERED:

---

notice of agency and the name and address of the beneficial owner. . . .

**3.** 28 U.S.C. § 1337(a) was cited by Allou as an alternative basis for dismissal for lack of subject matter jurisdiction. Section 14706 is

the section under which the original complaint was filed on August 11, 1997. The complaint was amended, as of right, stating the claim solely under § 13706.