**CENTRAL TRANSPORT INTERNATIONAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 03–2206C.**

United States Court of Federal Claims.

Dec. 22, 2004.

Daniel C. Sullivan, Sullivan Hincks & Conway, Oak Brook, Illinois, for Plaintiff. John J. Conway and Matthew P. Barrette, Of Counsel, for Plaintiff.

Kelly B. Blank, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant. Captain Timothy J. Ryan, Department of the Army, U.S. Army Litigation Division, Arlington, Virginia, Of Counsel, for Defendant.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

WILLIAMS, Judge.

In this action, Central Transport International, Inc. (Central) claims that the Govern-

ment breached contracts for transportation services by failing to pay Central $107,110.44 in charges. This matter comes before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction. Because there is no privity of contract between Plaintiff and the Government, and such privity is a jurisdictional prerequisite for a contract claim, this Court lacks subject matter jurisdiction over this action.

### Background [1]

This case involves shipments of household goods of DOD personnel transported pursuant to Government bills of lading (GBL). GBLs are contracts between an authorized Government agent and a DOD-approved carrier by which the Government accepts a DOD-approved carrier's offer to perform transportation services for a set cost. Central, an interstate motor common carrier, was not a party to any GBL at issue in this case, but did provide transportation services under a commercial bill of lading with an intermediary broker.

These goods were moved pursuant to a program administered by the Military Traffic Management Command (MTMC), which has since been renamed the Surface Deployment and Distribution Command (SDDC). Under the program, certain Transportation Service Providers (TSPs) were approved to participate in the Department of Defense Personal Property Program. These TSPs were listed in the Personal Property Carrier Qualification (PPQWEB) database. Declaration of Eunice P. Anderson (Nov. 24, 2004) (Anderson Decl.) ¶ 2. At no time in the past 20 years was Central an approved TSP. (Anderson Decl. ¶¶ 3, 4.)

According to Plaintiff, the goods were shipped in four stages, but Plaintiff was not involved until stage three. First, DOD issued a GBL to an approved carrier (Consignor). Second, the Consignor would arrange for the transportation of the goods through one of two intermediary brokers, J. Enterprises, Inc. (J. Enterprises) or Melmista Transport, Inc. (Melmista Transport) (collectively Brokers).[2] Third, the Brokers would arrange for transportation of the goods through Plaintiff, under a uniform straight bill of lading (SBL) between Central and the Brokers. Finally, Plaintiff would transport the goods to consignee transportation companies, that would unpack and deliver the goods to the DOD personnel at their new location. Between July 2000 and November 2000, Plaintiff moved the household goods of DOD personnel to various locations in the United States.

Plaintiff appended five GBLs and some 131 SBLs to its complaint.[3] Plaintiff was not a signatory to any of the appended GBLs. Although each SBL described the shipment as being "DOD SPONSORED," none of the SBLs contained the signature of any authorized Government agent. In the "BILL CHARGES TO" block on all 131 SBLs, the only party listed was the Broker—either J. Enterprises or Melmista Transport.

After transporting the goods under the SBLs, Plaintiff applied for payment by sending invoices to either J. Enterprises or Melmista Transport. Central never sent invoices to the Government for payment. J. Enterprises failed to pay Plaintiff $62,897 in freight charges and Melmista Transport failed to pay Plaintiff $40,220 in charges, and Plaintiff seeks to recover these amounts from the United States.[4]

---

1. The Background is derived from the Complaint and attachments, Plaintiff's Response to Defendant's Motion to Dismiss and attachments, the Declaration of Eunice P. Anderson and all supplemental filings, including copies of bills of lading and corresponding explanatory material filed by Plaintiff.

2. Neither broker appears in the PPQWEB database currently, or was found in the database's "paper files" from the last 20 years. (Anderson Decl. ¶¶ 3, 4.)

3. On November 15, 2004, the Court requested that Plaintiff file legible copies of the GBLs appended to the Complaint.

4. In 2002, the principal of J. Enterprises and Melmista Transport, James Zgleszewski, was indicted for mail fraud in connection with the transportation brokerage services that he provided for DOD and other entities, including the shipments moved by Plaintiff. According to the indictment, Mr. Zgleszewski kept payments that he received from the Consignor, and withheld payment from Plaintiff and other carriers.

## Discussion

Subject matter jurisdiction may be challenged at any time by any parties, by the Court *sua sponte*, and even on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.1993). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993); *Holland v. United States*, 57 Fed.Cl. 540, 551 (2003). Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir.2002).

The Tucker Act authorizes the Court of Federal Claims to hear any claim founded upon an express or implied-in-fact contract with the United States. 28 U.S.C. § 1491(a)(1). The Federal Circuit has stated that "to maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the Government." *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed.Cir. 1998) (internal citation omitted). Stated differently, there must be privity of contract between the plaintiff and the United States. *See Chancellor Manor v. United States*, 331 F.3d 891, 899 (Fed.Cir.2003) (noting long-standing rule that privity is required in contract cases under the Tucker Act); *Cienega*, 194 F.3d at 1239; *Globex Corp. v. United States*, 54 Fed.Cl. 343, 347 (2002); *Martinez v. United States*, 48 Fed.Cl. 851, 860 (2001), *aff'd*, 281 F.3d 1376 (Fed.Cir.2002), *reh'g denied*, 281 F.3d 1376 (Fed.Cir.2002).[5] A finding of privity between the Plaintiff and the Government "is a jurisdictional prerequisite for a contract claim because 'the government consents to be sued only by those with whom it has privity of contract.'" *Globex*, 54 Fed. Cl. at 347 (citing *Erickson Air Crane Co. v.*

*United States*, 731 F.2d 810, 813 (Fed.Cir. 1984)). Absent privity between the plaintiff and the United States, there has been no waiver of sovereign immunity for a suit in contract. In this action, Plaintiff has failed to establish this prerequisite for the Court's jurisdiction.

The contractual relationship between a carrier and the Government is governed by a tender and a Government bill of lading. *Baggett Transp. Co. v. United States*, 23 Cl.Ct. 263, 265 (1991), *aff'd*, 969 F.2d 1028 (Fed.Cir.1992). The tender is the carrier's offer to provide transportation at a set rate and the Government bill of lading is the Government's acceptance of the carrier's offer. *Id.* As the Federal Circuit has explained:

> [A]government bill of lading (GBL) [is] a document used by the government when acquiring freight transportation services from common carriers. Each GBL [is a] contract between the parties, establishing their respective rights with regard to the transportation services procured and provided.

*Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1016 (Fed.Cir.1995). Thus, a GBL establishes privity between the carrier and the Government. *Interstate Van Lines, Inc.*, GSBCA No. 16250, 2004 WL 1067986 (May 3, 2004) ("A GBL is a contract between the Government and a carrier.").

█ Plaintiff does not dispute that it was not a party listed on the face of any of the GBLs that DOD issued for the shipments at issue. Instead, Plaintiff argues that the SBLs executed between the Brokers and Central, in conjunction with its transportation of DOD's goods, created a contractual relationship between Central and the Government pursuant to the ICA establishing privity between the Government and Central.

Plaintiff's SBLs do not establish contractual privity with the Government, since the Government was not a party to those bills of

---

**5.** Plaintiff avers that "[t]his case sounds solely in contract." Pl.'s Resp. To Def. Mot. To Dismiss at 2. The Federal Circuit held in *Inter–Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1369 (Fed.Cir.2002) that the Interstate Commerce Act (ICA) "applies to actions by common carriers

seeking to recover 'charges' or 'payments' allegedly owed on *contracts* with government for transportation services." (emphasis added). Although the ICA applies to this action, Plaintiff must allege the existence of a contract with the Government sufficient to confer jurisdiction.

lading. The Comptroller General has disallowed claims by a subcontractor against DOD for transportation services performed in connection with the carrier's GBLs.[6] *Trism Specialized Carriers, Inc.,* 96–1 CPD ¶ 202, 1996 WL 191150. In *Trism,* DOD issued a GBL to Roadair Feeder Service, which then subcontracted to Trism Specialized Carriers to transport the goods. Roadair failed to pay Trism, and Trism sought payment from DOD. GAO held that Trism could not recover from the Government because, among other reasons, it was not a party to the Government bill of lading. *Trism,* 96–1 CPD ¶ 202. *See also Serv. Storage, Inc.,* B–183,331 (June 10, 1975) (warehouseman could not recover against the Government for costs incurred in storing Government goods which had been transported by a carrier pursuant to a GBL because it was not a party to the Government bill of lading); *Universal Storage Warehouses,* 43 Comp. Gen. 290 (Sept. 24, 1963) (warehouse, which was not in privity with the Government under a GBL, could not recover storage costs from the Government even though the warehouse performed as a subcontractor for a carrier which was a party to the GBL); *Accord, Interstate Van Lines, Inc.,* GSBCA No. 16250, 2004 WL 1067986 (May 3, 2004) (carrier that provided services for parties to a GBL, but was not itself a party to that GBL, lacked privity with the Government).

There is a further degree of separation here than existed in these cases. Central was a subcontractor to the Brokers, who were subcontractors to the TSP or consignor with which the Government contracted on the GBLs.[7] A fortiori, Central lacks privity with the Government here.[8]

■ At oral argument, counsel for Plaintiff argued that the reverse side of the GBLs established privity by incorporating into the GBL the terms of the commercial bills of lading it had entered with the Brokers.[9] The Court disagrees.

The reverse side of the GBL provides:

TERMS AND CONDITIONS

It is mutually agreed and understood between the United States and carriers, including forwarders, *who are parties* to this bill of lading that:

This bill of lading is governed by the regulations relating thereto as published in Title 41, Part 101–41 of the Code of Federal Regulations.

Except as provided in 41 CFR 101 *or as otherwise stated hereon,* this bill of lading is also subject to the same terms and conditions as govern commercial shipments

---

6. The Comptroller General reviewed this matter pursuant to 31 U.S.C.A. § 3726(i)(1). GAO determinations are not binding on this Court, but can be persuasive. *See Fed. Mgmt. Sys. v. United States,* 61 Fed.Cl. 364, 367 n. 3 (2004).

7. Plaintiff was not an approved carrier appearing in the PPQWEB database, eligible to be a party to GBL.

8. In rare instances, privity of contract may be found between the Government and a subcontractor under an agency or "deemed privity" theory. *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1549–50 (Fed.Cir.1983). Under the "deemed privity" theory, a subcontractor must demonstrate that: "the prime contractor was (1) acting as a *purchasing* agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, and (3) the contract stated that the government would be directly liable to the vendors for the purchase price." *Johnson Controls,* 713 F.2d at 1551 (emphasis in original); *Globex Corp. v. United States,* 54 Fed.Cl. at 347–48. In *Johnson Controls,* the

court noted that the Supreme Court in *United States v. New Mexico,* 455 U.S. 720, 742, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) enumerated these same factors as well as others, including title passing directly to the Government. *Johnson Controls,* 713 F.2d at 1551.

This theory is not applicable here. There is no suggestion in the record that the Consignor or the Brokers were Government agents, and the GBLs did not state that the Government would be directly liable to Central for the charges of shipping the goods. Notably, Central is never mentioned in any GBL. Further, on each SBL, either J. Enterprises or Melmista was listed under the "Bill Charges To" section, not the Government.

9. Tr. at 24–26. Plaintiff filed the reverse side of the GBL, Form 1203, on November 22, 2004, and cites additional language on the back of the GBL to bolster its argument. Pl.'s Resp. To Def. Mot. To Dismiss at 5. However, that language states that it applies to "[a]ll parties to *this* bill of lading," and Central was not a party to any GBL. (emphasis added).

made on the usual forms provided therefor by the carrier.

(emphasis added).

Plaintiff relied on the final quoted paragraph to argue that because each GBL was to be governed by the *same terms and conditions as commercial shipments* made on the usual forms provided by the carrier, all the terms and conditions of the SBLs between Central and the Brokers were thereby incorporated into the GBLs, creating privity between the signatories to the SBL and GBL. Tr. at 25–26. Such a reading of the GBL is unwarranted and unprecedented. The paragraphs on the back side of the GBL cannot be construed as incorporating into that GBL all provisions of undescribed commercial bills of lading to be executed down the line by entities unknown to the Government, thereby rendering the Government liable for third-party transportation costs. Such a construction would render the GBL illusory. Rather, it is clear from the language in the first paragraph on the back of the GBL, that the GBL was a contract exclusively between the "United States and carriers, including forwarders, who [were] *parties* to the GBL," not unmentioned brokers and their subcontractors. (emphasis added).

Plaintiff also claims privity of contract with the Government because it falls within the regulatory definition of a Transportation Service Provider. The pertinent regulation, 41 CFR 102–118.35, does define a TSP as "any party person, agent, or carrier that provides freight or passenger transportation and related services to an agency." However, this definition does not imbue a TSP, which is a subcontractor, with the right to recover payment from the Government for services provided in the absence of a contract between the Government and that party. This is made clear by a more specific provision in the regulation. 41 CFR 102–118.205 states:

> 102–118.205 May my agency pay a subcontractor or agent functioning as a warehouseman for the TSP providing service under the bill of lading?
>
> No, your agency may only pay the TSP with whom it has a contract. The bill of lading will list the TSP with whom the Government has a contract.

Further, contrary to Plaintiff's assertions, the Government is not made liable, by implication, for payment to Plaintiff when it is clear from the face of each SBL that the Brokers were *expressly* obligated to pay. *See Fikse & Co. v. United States*, 23 Cl.Ct. 200, 204 (1991) ("... no implication of an agreement to pay could arise by acceptance in view of the express provisions obligating [the non-government entity that contracted with the plaintiff] to pay shipping charges").[10]

In short, Plaintiff has not alleged any set of facts which, if true, would establish its privity of contract with the Government. Therefore, this Court lacks subject matter jurisdiction over this action.[11]

### Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **GRANTED**. The Clerk is directed to dismiss this action. No costs.

---

**10.** At oral argument Plaintiff cited 49 U.S.C. §§ 13712 and 13706, arguing that both mandate payment of charges to Central. However, neither of these statutory provisions dispense with the necessity of establishing privity of contract with the Government in order to establish jurisdiction under the Tucker Act. *See Fikse & Co. v. United States*, 23 Cl.Ct. 200, 203–04 (1991); *In re Roll Form Prods.*, 662 F.2d 150, 154 (2d Cir. 1981) ("The [ICA], in our view, was not intended to 'fashion a sword' to insure collection by carriers of freight charges."); *cf. S & B Transp., Inc. v. Allou Distribs., Inc.*, 41 F.Supp.2d 388, 391–92 (E.D.N.Y.1999) (holding that 49 U.S.C. § 13706 does not confer federal subject matter jurisdiction over disputes involving independent brokerage contracts between broker and shipper). ·

**11.** As a alternative ground for dismissal, Plaintiff lacks standing to pursue this action. *See Anderson v. United States*, 344 F.3d 1343, 1351 (Fed.Cir.2003) ("To have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States."); *Hughes v. United States*, 58 Fed.Cl. 291, 307 (2003).