# United States Court of Appeals for the Federal Circuit

---

**ESTES EXPRESS LINES,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5056

---

Appeal from the United States Court of Federal Claims in No. 11-CV-0597, Judge Francis M. Allegra.

---

Decided: January 3, 2014

---

ROBERT D. MOSELEY, JR., Smith Moore Leatherwood, LLP, of Greenville, South Carolina, argued for plaintiff-appellant.

DANIEL B. VOLK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

---

Before PROST, REYNA, and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge.*

Estes Express Lines ("Estes") appeals from a final order of the Court of Federal Claims ("Claims Court") dismissing Estes's complaint for lack of subject matter jurisdiction. *Estes Express Lines v. United States*, 108 Fed. Cl. 416 (2013). For the reasons below, we *reverse* and *remand* for further proceedings.

## BACKGROUND

Estes, a federal motor carrier, seeks to recover from the Government freight charges incurred by Marine Corps Community Services ("MCCS"). The charges in question correspond to shipments arranged on behalf of MCCS by a freight broker, Salem Logistics ("Salem"), for deliveries between June 2008 and February 2009. Estes and Salem do not have a written contract, and Estes handled all shipments under its common carrier tariff.

Salem arranged the shipments pursuant to a contract with MCCS ("the Salem-MCCS contract"). Under this contract, Salem agreed to provide MCCS with certain transportation and freight management services, including coordinating the pick-up, transport and delivery of vendor products to various MCCS or Marine Corps Exchange ("MCX")[1] locations around the country. Specifically, upon being contacted by a vendor who received an order from MCCS or MCX, Salem would select a carrier to move the merchandise from the vendor to the MCCS/MCX destination. The contract provided that Salem would pay the carriers directly and then invoice MCCS. Salem further agreed not to represent itself as an agent or representative of MCCS.

Each shipment handled by Estes was identified by a bill of lading, a freight bill, and a delivery receipt. All

---

[1]    MCX is a division of MCCS.

bills of lading listed a MCCS or MCX destination as the "consignee," and most bills of lading identified the third-party vendor as the "shipper." In some instances, goods were moved from a Navy Exchange location to an MCX location, or from one MCX location to another, in which case a government entity was listed as the "shipper." Pursuant to the Salem-MCCS contract, all bills of lading further indicated that "third party freight charges" were to be billed to "Marine Corps Exchange C/O Salem Logistics." The delivery receipts also specified that charges should be billed to the "Marine Corps Exchange." Each delivery receipt was signed by a representative of the MCCS or MCX location to which the goods were delivered.

Following delivery, Estes invoiced "MCX, care of Salem" for freight charges. Although MCCS paid Salem for some of the shipments, it appears that Salem never remitted payment to Estes. After it became aware that Salem was failing to pay Estes and other carriers, MCCS began paying carriers directly, but only for shipments for which it had not yet paid Salem.

On February 3, 2010, Estes filed suit against Salem and the Government in district court seeking to recover $147,645.33 in freight charges for which it allegedly had not received payment from Salem or MCCS. On July 8, 2011, the case was transferred to the Claims Court. On January 6, 2012, the Government moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Although Estes did not attach any shipping documents to its complaint, it included copies of exemplary bills of lading and delivery receipts in its opposition to the Government's motion to dismiss.

On January 15, 2013, the Claims Court dismissed Estes's complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. The Claims Court held that there is no direct privity of contract between Estes and

the Government because "[i]t was Salem, and not Estes Express, that had a contractual relationship with defendant; Estes Express' contractual relationship was with Salem only, as a subcontractor." 108 Fed. Cl. at 421. According to the Claims Court, this relationship "is plainly reflected in the contract that defendant had with Salem," and "[n]othing in the bills of lading that plaintiff has introduced into the record contradicts this notion." *Id.* The Claims Court also rejected Estes's "deemed privity" theory, finding that Salem did not act as the Government's agent. Finally, the Claims Court also rejected Estes's claim under 49 U.S.C. § 13706, which governs the liability of consignees for shipping charges incurred by a common carrier, following Claims Court precedent holding that the statute does not "create liability in the consignee in the face of an express contractual allocation elsewhere of freight charges." *Id.* at 422 (citing *Cent. Freight Lines, Inc. v. United States*, 87 Fed. Cl. 104, 112 (2009); *Cent. Transp. Int'l, Inc. v. United States*, 63 Fed. Cl. 336, 340 (2004)).

Estes timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review *de novo* whether the Claims Court possessed jurisdiction. *Maher v. United States*, 314 F.3d 600, 603 (Fed. Cir. 2002). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993).

The Tucker Act, 28 U.S.C. § 1491, confers jurisdiction on the Claims Court and waives sovereign immunity for

certain claims for monetary relief against the United States. But the Tucker Act itself does not create a substantive cause of action; to demonstrate that the Claims Court has jurisdiction to entertain its claim under the Tucker Act, the plaintiff must identify a constitutional provision, federal statute, executive agency regulation, or "any express or implied contract with the United States" that creates the right to money damages. *See* 28 U.S.C. § 1491(a)(1). Estes advances two grounds upon which it argues the Claims Court has Tucker Act jurisdiction. First, Estes asserts a claim based on contract, arguing that a contractual relationship with the Government exists either directly under the bills of lading or, alternatively, because Salem acted as an agent of the Government, binding the Government under a "deemed privity" theory. Second, Estes asserts a claim under 49 U.S.C. § 13706, arguing that the Government is directly liable as the consignee and owner of the freight.

To maintain a cause of action under the Tucker Act based on a contract, Estes must show that there is a contract directly between itself and the Government, *i.e.*, that there is privity of contract. *See Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998); *Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003). The effect of finding privity of contract is to find a waiver of sovereign immunity. *Cienega Gardens*, 194 F.3d at 1239. Whether a contract exists is a mixed question of law and fact, but where "the parties do not dispute the relevant facts, the privity issue reduces to a question of law, which we review *de novo*." *Id.*

The Claims Court found a lack of direct privity between Estes and the Government because "[i]t was Salem, and not Estes Express, that had a contractual relationship with defendant; Estes Express' contractual relationship was with Salem only, as a subcontractor." 108 Fed. Cl. at 421. The Claims Court based its conclusion mainly on the MCCS-Salem contract, which "describe[s] the

nature of [Salem's] services and the invoicing mechanisms that would be employed in reimbursing Salem for the amounts that it paid to its carriers, such as Estes Express." *Id.* But regardless of whether the contract reflects an agreement between Salem and MCCS regarding payment logistics, it also reflects MCCS's intention that "[a]ll shipments that are F.O.B. origin must be shipped on a third party collect bill of lading" and that freight charges should be "third party billed to Marine Corps Exchange C/O Salem Logistics." In other words, MCCS intended to be bound by bills of lading that would reflect not only that it was the consignee and owner of the freight, but also the party ultimately responsible for freight charges. Accordingly, the MCCS-Salem contract does not foreclose the existence of a separate contractual relationship between Estes and the Government that may have arisen under the bills of lading it elected to use.

The bill of lading is "the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982). Ordinarily, under default bill of lading terms, the shipper or consignor assumes the obligation to pay freight charges. But a party to the shipment may assume liability where the terms of the bill of lading so provide and the party accepts the shipment subject to the terms of the bill of lading. *See Louisville & N.R. Co. v. Cent. Iron & Coal Co.*, 265 U.S. 59, 70 (1924).

Here, the undisputed facts are sufficient to establish that the Government is a party to the bills of lading not only as the "bill to" party, but also as the shipper at least in those instances in which goods were moved from one Government location to another. MCCS expressly authorized, by contract, its designation as a party to the bills of lading. Indeed, the Government concedes that all bills of lading were generated consistent with the instructions in the MCCS-Salem contract. The Claims Court also found

that MCX accepted all shipments without exception, and that a MCX representative signed each delivery receipt listing MCX as the "bill to" party. Under these circumstances, the bills of lading are sufficient to meet Estes's burden to show privity with the Government.

To be clear, we need not, and do not decide the question of whether the Government may be liable for freight charges solely on the basis that it is the consignee and owner of the freight. We recognize previous decisions by the Claims Court, relied on by the court below, finding that uniform straight bills of lading were insufficient to establish privity of contract with the Government. *See Cent. Freight Lines,* 87 Fed. Cl. at 110-11; *Cent. Transp.,* 63 Fed. Cl. at 338-39. Those decisions are not binding on us, and are distinguishable as well. In those cases, unlike in this case, the Government was not a party to the commercial bills of lading in question, which were instead between the carriers and the brokers and did not list the Government as the party to be billed. *See Cent. Freight Lines*, 87 Fed. Cl. at 107, 109; *Cent. Transp.*, 63 Fed. Cl. at 337-38.

The Claims Court erred in dismissing the weight of the bills of lading on the basis of the MCCS-Salem contract. Although the parties to a freight shipment are generally free to modify default bill of lading terms by a separate contract, *see Louisville*, 265 U.S. at 66, a contract with a broker who is not a party to the bills of lading does not necessarily accomplish the same. In this case, there is no indication that Estes agreed to any terms in the Salem-MCCS contract purporting to allocate liability. There is also no evidence that Estes agreed to release MCCS from liability upon MCCS forwarding payment to Salem, or that Salem otherwise acted as an agent of Estes in collecting payment. Therefore, the provisions of the MCCS-Salem contract cannot alter any contractual obligations arising separately under the bills of lading.

CONCLUSION

The Claims Court erred in dismissing Estes's complaint for lack of subject matter jurisdiction. Although we do not express any opinion regarding the merits of Estes's claims and the issue of ultimate liability, we conclude that the bills of lading are sufficient to establish privity. We decline to address Estes's "deemed privity" theory and whether 49 U.S.C. § 13706 provides the Claims Court with jurisdiction. Accordingly, we

**REVERSE AND REMAND**

COSTS

Each party shall bear its own costs.