**CENTRAL FREIGHT LINES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 08–331C.

United States Court of Federal Claims.

May 5, 2009.

J.W. Taylor, Orlando, FL, for plaintiff.

Courtney E. Sheehan, U.S. Department of Justice, Washington, DC, with whom were Gregory G. Katsas, Assistant Attorney General, and Jeanne E. Davidson, Director, for defendant.

## OPINION

FIRESTONE, Judge.

This case comes before the court on the defendant's motion to dismiss the plaintiff's complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction. The plaintiff, Central Freight Lines, Inc. ("Central Freight" or "the plaintiff"), an interstate motor carrier, claims in this action that the United States Department of Defense ("DOD," "the government," or "the defendant") breached contracts for transportation services by failing to pay Central Freight $172,089.93 in charges. For the reasons discussed below, the government's motion to dismiss is **GRANTED.**

## I. BACKGROUND FACTS

The following background facts are taken from the pleadings and are undisputed unless otherwise noted. This case involves shipments of crated household goods, known in the industry as "Freight All Kinds" ("FAK"), belonging to DOD personnel transported pursuant to government bills of lading. A government bill of lading ("GBL") is a contract between the government and a DOD-approved carrier by which the government accepts the carrier's offer to perform transportation services at a set cost. In order to contract with the government, the carrier must be a pre-qualified transportation service provider ("TSP").

In this case, the DOD, through the Military Surface Deployment and Distribution

Command ("SDDC"),[1] issued a series of GBLs to Dispatch Services, Inc. ("Dispatch") for trucking services, including the transportation of FAK belonging to DOD employees. Dispatch was registered as a TSP for FAK but was not registered with the SDDC as a broker during the period at issue. The GBLs identify Dispatch as a provider of motor carrier services, not broker services. Dispatch then entered into subcontracts with the plaintiff under straight bills of lading ("SBLs"). None of the SBLs incorporated any provisions of the GBLs between the government and Dispatch. Approximately 1,300 SBLs were issued between June 2005 and May 2006. All of the SBLs list "Dispatch Services, Inc." as the party to be billed. *See* Ex. A to Ptf.'s Supp. Br. The defendant avers, and the plaintiff does not dispute, that the DOD paid Dispatch the full amount due under the GBLs for the period at issue. However, it appears that Dispatch did not pay Central Freight for the transportation services it provided. Dispatch has since gone out of business.

Briefing was completed on March 3, 2009.[2] Oral argument was deemed unnecessary.

## II. STANDARD OF REVIEW

■■■ RCFC 12(b)(1) governs the dismissal of claims for lack of subject matter jurisdiction. In reviewing a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted); *see also Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997); *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995) ("[T]he court [is] obligated to assume all factual allegations to be true and to draw all reasonable infer-

ences in plaintiff's favor."). *See generally Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). The plaintiff, however, bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (*citing McNutt v. Gen. Motors*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence. *Reynolds*, 846 F.2d at 748. Because jurisdiction is a threshold matter, a case can proceed no further if a court lacks jurisdiction to hear it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation omitted)); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). *See generally John R. Sand & Gravel v. United States*, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). It is well-settled that when the court considers a motion to dismiss for lack of subject matter jurisdiction, it may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991).

## III. DISCUSSION

### A. Introduction

■■■ The Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), grants the Court of Federal Claims jurisdiction to hear any claim founded upon an express or implied-in-fact contract with the United States. The Federal Circuit has held that in order "to maintain a cause of action pursuant to the Tucker Act

---

1. The SDDC is a component of the DOD and is responsible through either the Personal Property Directorate or the Domestic Business Requirements Section for coordinating the transport of household goods or FAK, respectively.

2. In response to the court's order for supplemental briefing, the plaintiff filed copies of over 1,300 SBLs between Dispatch and Central Freight. Ptf.'s Supp. Br. at Ex A. The defendant also filed

the declaration of Evert L. Bono III, Chief of the Domestic Business Requirements Section of the SDDC, stating that while several GBLs were issued to Dispatch during the time period in question, it could not be determined which of these related to the goods described in the SBLs. Def.'s Resp. to Ptf.'s Supp. Br. ("Def.'s Resp.") at Ex. B ("Bono Decl.") ¶¶ 15–17.

that is based on a contract, *the contract must be between the plaintiff and the government."* *Cienega Gardens v. United States,* 194 F.3d 1231, 1239 (Fed.Cir.1998) (internal citation omitted) (emphasis added); *see Cent. Transp. Int'l, LLC v. United States ("Central Transport"),* 63 Fed.Cl. 336, 338 (2004) (same) (*citing Chancellor Manor v. United States,* 331 F.3d 891, 899 (Fed.Cir.2003) (noting longstanding rule that privity is required in contract cases under the Tucker Act)). Privity between the plaintiff and the government "is a jurisdictional prerequisite for a contract claim because 'the government consents to be sued only by those with whom it has privity of contract.'" *Globex Corp. v. United States,* 54 Fed.Cl. 343, 347 (2002) (*quoting Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984)). "Absent privity between the plaintiff and the United States, there has been no waiver of sovereign immunity for a suit in contract." *Central Transport,* 63 Fed.Cl. at 338.

### B. No Contract Existed Between the Government and Central Freight.

▉ The plaintiff asserts that this court has subject matter jurisdiction because its claims are predicated on contracts between the government and Central Freight. The plaintiff argues that it should prevail on one of two alternative contract theories. Firstly, the plaintiff argues that the SBLs establish direct privity of contract between the plaintiff and the government. Alternatively, the plaintiff argues that the parties should be deemed to be in privity of contract because Dispatch acted as an agent of the government when it entered into the SBL contracts with Central Freight, thus obliging the government to pay Central Freight regardless of whether or not it made payment to Dispatch. Ptf.'s Supp. Br. at 8 (*citing United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1549–50 (Fed.Cir.1983)).

▉ By way of background, a brief explanation of the contractual relationship between the government and a carrier is in order. A contractual relationship between the government and a carrier is governed by a tender and a GBL. *Baggett Transp. Co. v. United States,* 23 Cl.Ct. 263, 265 (1991), *aff'd,* 969 F.2d 1028 (Fed.Cir.1992) ("The terms of the contractual relationship between carrier and shipper consist of the tender and incorporated tariff, representing the offer, and the GBL and its annotations, representing the acceptance."). As the Federal Circuit explained in *Dalton v. Sherwood Van Lines, Inc.,* 50 F.3d 1014, 1016 (Fed.Cir.1995), "[A GBL is] a document used by the government when acquiring freight transportation services from common carriers. Each GBL [is a] contract between the parties, establishing their respective rights with regard to the transportation services procured and provided." (*quoted in Central Transport,* 63 Fed.Cl. at 338). "Thus, a GBL establishes privity between the carrier and the Government." *Central Transport,* 63 Fed.Cl. at 338. However, it is well-established that "subcontractors normally are not in privity with the Government" except where "the prime contractor is a mere government agent." *Johnson Controls,* 713 F.2d at 1550, 1551. In the absence of such agency, courts have routinely held that a subcontractor has no standing or contractual cause of action to sue the government. *See, e.g., Johnson Controls,* 713 F.2d at 1550 (denying claim brought by a subcontractor); *Central Transport,* 63 Fed.Cl. at 338–39 (denying claim brought by subcontractor to a subcontractor). Tested by these standards, the plaintiff's contract claim must be dismissed.

### 1. Neither the GBLs Nor the SBLs Establish Privity of Contract Between Central Freight and the Government.

The plaintiff argues that express contracts existed between Central Freight and the government for the transportation services the plaintiff provided. Central Freight asserts, "A contract between the government and the carrier forms each time the government accepts the carrier's transportation services with the carrier's bill of lading," Ptf.'s Supp. Br. at 5 (*citing Central Transport,* 63 Fed.Cl. at 338), and that "[t]he Bills of Lading in this case establish express contracts between the DOD and Central Freight

Lines."[3] *Id.* The plaintiff states that

> Central Freight Lines is named as carrier in the Bills of Lading. *Compare Central Transp[ort],* 63 Fed.Cl. at 338 (no privity where carrier is not named on the bill of lading). The DOD is listed as consignee on the Bills of Lading.... As consignee and owner of goods transported by Central Freight Lines, DOD is liable for payment of the rates of transportation. *S[ ]. Pac[.] Transp. Co.[ v. Commercial Metals Co.],* 456 U.S. [336,] 343, 102 S.Ct. 1815, 72 L.Ed.2d 114 [(1982)]; 49 U.S.C. § 13706 [(1995)].

*Id.* at 5–6.

In response, the government asserts that "[i]n merely contending that a bill of lading establishes privity of contract between the government and motor carrier, Central [Freight] is attempting to deliberately obscure an important distinction between a *government* bill of lading and a *straight* bill of lading...." Def.'s Resp. at 4 (emphasis in original) (citation and internal quotation marks omitted). The government argues that while it had contracts in the form of GBLs with Dispatch for delivery of the goods that Central Freight ultimately delivered, the government was not a party to the SBLs between Dispatch and Central Freight and therefore had no contractual relationship with the plaintiff. The government states, "To establish the existence of either an express or implied-in-fact contract, Central [Freight] must demonstrate: (1) mutual intent to contract; (2) consideration; (3) lack of ambiguity in an offer and acceptance; and (4) actual authority on the part of the Government representative to bind the United States in contract." Def.'s Resp. at 6 (*citing Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1434 (Fed.Cir.1998); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990)). The government contends that the plaintiff has failed to demonstrate the existence of any of these required elements.

This court agrees with the government that Central Freight has not established that it had an express or implied-in-fact contract with the United States. While the plaintiff has supplied this court with over 1,300 SBLs between itself and Dispatch, the SBLs fail to establish a contractual relationship between the government and Central Freight. *See* Ptf.'s Supp. Br. at Ex. A. Although, as discussed below, the plaintiff claims that Dispatch was acting as a broker and agent of the government when Dispatch contracted with Central Freight, the plaintiff has not presented evidence sufficient to establish that Dispatch had actual authority to bind the United States in contract. *See City of El Centro,* 922 F.2d at 820 ("When the United States is a party, a fourth requirement is added: the Government representative 'whose conduct is relied upon must have actual authority to bind the government in contract.'" (*quoting Juda v. United States,* 6 Cl.Ct. 441, 452 (1984) (further citations omitted))). No signature of an SDDC employee, other DOD employee, or any other government representative appears on the SBLs. Furthermore, the plaintiff does not claim to be a party to the GBLs, nor to even be mentioned on them. In short, drawing all reasonable inferences in favor of the plaintiff, Central Freight has failed to raise a right of relief above the speculative level. *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

## 2. Dispatch Was Not Acting as an Agent of the United States When It Contracted with Central Freight.

■ The plaintiff also argues that this court should find "deemed privity" of contract between Central Freight and the government. In support, the plaintiff cites *Johnson Controls,* 713 F.2d at 1549–50. In *Johnson Controls,* the Federal Circuit held that, as an exception to the general rule that subcontractors are not in privity of contract with the government, the government may be deemed to be in privity of contract with a subcontractor where the prime contractor was "(1) acting as a *purchasing* agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, and (3) the contract stated that the

---

**3.** Although the plaintiff does not specify whether the bills of lading to which it refers are the GBLs or the SBLs, it is clear from the context that the plaintiff is referring to the SBLs.

government would be directly liable to the vendors for the purchase price." *Johnson Controls,* 713 F.2d at 1551 (citations omitted) (emphasis in original); *see also Central Transport,* 63 Fed.Cl. at 339 n. 8 (enumerating the *Johnson Controls* factors but finding no basis for deemed privity); *Globex Corp.,* 54 Fed.Cl. at 347–48 (same). The plaintiff argues that all three factors identified in *Johnson Controls* are present. Firstly, claims the plaintiff, Dispatch was acting as a purchasing agent for the government "as evidenced by its role in soliciting transportation arrangements from Central Freight Lines, and by the very definition of 'brokers' under 49 U.S.C. § 13102(2) [ (2002) ('Section 13102(2))']." [4] Ptf.'s Supp. Br. at 8. Secondly, argues Central Freight, "the DOD consented to the contractual relationship with Dispatch Services as evidenced by the Bills of Lading." *Id.* Finally, the plaintiff claims that "the DOD, as a named party in the Bills of Lading, agreed to be liable for the freight charges by accepting the transportation services of Central Freight Lines." *Id.* at 8–9 (*citing S. Pac. Transp. Co.,* 456 U.S. at 343, 102 S.Ct. 1815; 49 U.S.C. § 13706).

In response, the government argues that the plaintiff misapplies the *Johnson Controls* test. The government argues that the fact that Dispatch subcontracted with Central Freight is insufficient to demonstrate that Dispatch acted as the government's purchasing agent. The government notes that in his declaration, Mr. Bono "unequivocally stated that Dispatch was not authorized to act as a broker or agent of the Government." Def.'s Resp. at 8; Bono Decl. ¶¶ 8 ("from 1999 to 2009 Dispatch ... had legal authority to operate only as a carrier, not a broker"), 9 ("Dispatch was not registered with SDDC as a broker during this period"), 12 ("None of the contract documents authorized Dispatch to act as an agent of DOD."). Likewise, the government argues that the SBLs between Dispatch and Central Freight "fail[ ] to demonstrate that any agency relationship between Dispatch and the Government was established by 'clear contractual consent.'"

Def.'s Resp. at 8 (*quoting Johnson Controls,* 713 F.2d at 1551). The government argues that "Central [Freight] has failed to establish that the United States was a party to the [SBLs]" and that "[i]n any event, nowhere in those bills of lading is any agency relationship even referenced." *Id.* Finally, the government argues that "Central [Freight] has failed to establish that any purported contract stated that the Government would be directly liable to ... Central [Freight]" and adds that "as each bill of lading demonstrates, any bill for service was to be submitted to Dispatch, and nothing on the contract states or even implies that the United States agreed to pay Central [Freight] for any services." *Id.* Thus, argues the defendant, the plaintiff cannot establish that Dispatch was acting as a government agent, and the parties cannot be deemed to be in privity of contract.

The court agrees with the government that, for the reasons the government advances, the plaintiff has failed to satisfy any of the three *Johnson Controls* factors. The plaintiff has not pled jurisdictional facts sufficient to demonstrate that Dispatch was acting as a government agent when it subcontracted with Central Freight. Indeed, Dispatch was not a registered broker with the DOD and did not possess actual authority to bind the government in contract. Nowhere was an agency relationship between the government and Dispatch established by clear contractual consent. *See* Bono Decl. ¶ 12 ("None of the contract documents authorized Dispatch to act as an agent of DOD."). Furthermore, as in *Central Transport,* the GBLs did not state that the government would be directly liable to the plaintiff for the charges of shipping the goods. *See Central Transport,* 63 Fed.Cl. at 339 n. 8. As was the plaintiff's situation in that case, Central Freight was never mentioned in any GBL. *See id.* Additionally, each SBL listed Dispatch as the sole party to be billed. Ptf.'s Supp. Br. at Ex. A; *see Central Transport,* 63 Fed.Cl. at 339 n. 8.

---

**4.** Section 13102(2) defines "broker" for purposes of Title 49 as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."

Therefore, this court finds no basis to deem the parties to be in privity of contract.

## C. Neither 49 U.S.C. § 13706 Nor 41 C.F.R. § 102–118.35 Provides Jurisdiction.

As an alternative to a contractual basis for Tucker Act jurisdiction, the plaintiff asserts that 49 U.S.C. § 13706 ("Section 13706") provides a statutory basis for jurisdiction. Section 13706 governs the liability of consignees for shipping charges incurred by a common carrier. In its response to the defendant's motion to dismiss, the plaintiff cites *Fikse & Co. v. United States*, 23 Cl.Ct. 200, (1991), for the proposition that Section 13706[5] imposes liability where transportation services are provided by a common carrier. Ptf.'s Resp. at 4 (*citing Fikse*, 23 Cl.Ct. at 203, 204). The plaintiff argues that "[a]t all times material, Plaintiff … was a common carrier. Therefore, under the analysis of *Fi[ks]e* and the general rule of the *Fi[ks]e* court, that is, that liability may lie where transportation is provided by a common carrier, Plaintiff has sufficiently ple[d] a cause of action against the DOD." Ptf.'s Resp. at 4.

In response, the government argues that Section 13706 is inapplicable because "[i]n this case, Central [Freight] was clearly not acting in the capacity of a common carrier. Rather, as the [SBLs] demonstrate, Central [Freight] was providing services to Dispatch pursuant to a contract with Dispatch, not the United States." Def.'s Resp. at 4 (internal quotation marks removed). The defendant notes that the Fikse court held that Section 13706 "was not intended to 'create liability in the consignee in the face of an express contractual allocation elsewhere of freight

charges.' " *Id.* (*quoting Fikse*, 23 Cl.Ct. at 204) (*citing-in-turn In re Roll Form Prods.*, 662 F.2d 150, 153–54 (2d Cir.1981) ("The Interstate Commerce Act … was not intended to 'fashion a sword' to insure collection by carriers of freight charges[ n]or … to impose an absolute liability upon consignees for freight charges." (internal brackets removed)); *Consol. Freightways Corp. v. Admiral Corp.*, 442 F.2d 56, 62 (7th Cir.1971); *In re Penn–Dixie Steel Corp.*, 6 B.R. 817, 820 (Bankr.S.D.N.Y.1980), *aff'd*, 10 B.R. 878 (S.D.N.Y.1981); *S. Pac. Transp. Co. v. Campbell Soup Co.*, 455 F.2d 1219, 1220–22 (8th Cir.1972) (the principal purpose of the Interstate Commerce Act was to eliminate all forms of rate discrimination on interstate shipments)). Additionally, the government argues that Section 13706 does not provide a basis for jurisdiction where the subcontractor and the government are not in privity of contract.

Faced with the government's argument that the plaintiff was not acting as a common carrier, the plaintiff argues that Section 13706 does not "limit its application to common carriers," and therefore, "whether Central Freight[ ] Lines is a common or contract carrier is inapposite." Ptf.'s Reply at 4, 5. The plaintiff asserts that "Congress no longer recognizes a distinction between common and contract carriers," and cites 49 U.S.C. § 13902(f)(2)[6] (2005) in support of this proposition. In the alternative, the plaintiff argues that "[e]ven assuming the distinction was relevant, Central Freight Lines is a common carrier under the old common law test because though there were many bills of lading, there was no single contract govern-

---

5. At the time of the *Fikse* decision, Section 13706 was codified at 49 U.S.C. § 10744 (1989).

6. 49 U.S.C. § 13902(f)(2) states:
 Pre-existing certificates and permits.—The Secretary shall redesignate any motor carrier certificate or permit issued before the transition termination date as a motor carrier certificate of registration. On and after the transition termination date, any person holding a motor carrier certificate of registration redesignated under this paragraph may provide both contract carriage (as defined in section 13102(4)(B)) and transportation under terms and conditions meeting the requirements of

section 13710(a)(1). The Secretary may not, pursuant to any regulation or form issued before or after the transition termination date, make any distinction among holders of motor carrier certificates of registration on the basis of whether the holder would have been classified as a common carrier or as a contract carrier under—
 (A) subsection (d) of this section, as that section was in effect before the transition termination date; or
 (B) any other provision of this title that was in effect before the transition termination date.

ing the shipments tendered by DOD." Ptf.'s Reply at 5 (*citing Fikse*, 23 Cl.Ct. at 203).

This court adopts the reasoning expressed by Judge Williams in *Central Transport* and holds that Section 13706 does not "dispense with the necessity of establishing privity of contract with the Government in order to establish jurisdiction under the Tucker Act." 63 Fed.Cl. at 340 n. 10 (*citing Fikse*, 23 Cl.Ct. at 204; *In re Roll Form Prods.*, 662 F.2d at 154 ("The ICA, in our view, was not intended to 'fashion a sword' to insure collection by carriers of freight charges." (internal brackets omitted)); *S & B Transp., Inc. v. Allou Distribs., Inc.*, 41 F.Supp.2d 388, 391–92 (E.D.N.Y.1999) (holding that Section 13706 does not confer federal subject matter jurisdiction over disputes involving independent brokerage contracts between broker and shipper)). While the plaintiff attempts to distinguish *Central Transport* by arguing that "in *Central Transport[ ]*, the contract carrier was a sub-sub-contractor .... [while i]n the instant matter, the Plaintiff is at best[ ] a sub-contractor," Ptf.'s Resp. at 4, this court finds this to be a distinction without a difference. Section 13706 provides no basis for jurisdiction between the government and a subcontractor of any level, be it a subcontractor, a "sub-sub-contractor," or a "sub-sub-sub-contractor."

 In the alternative, the court agrees with the defendant that under the court's holding in *Fikse*, Section 13706 does not create liability in the consignee for shipping charges where there is a contract allocating these charges elsewhere. *See Fikse*, 23 Cl. Ct. at 204. Regardless of whether the carrier is deemed a "common" or "contract" carrier, the salient fact is whether or not a contract exists allocating shipping charges. As such a contract exists here and allocates shipping charges to Dispatch, Section 13706 does not apply and, therefore, provides no basis for this court's exercise of jurisdiction.

 The plaintiff also cites 41 C.F.R. § 102–118.35 (2004), which defines a TSP as "any party, person, agent, or carrier that provides freight or passenger transportation and related services to an agency," as a basis for jurisdiction on the theory that it dispenses with the requirement of privity of contract. Ptf.'s Resp. at 4–5. In *Central Transport*, Judge Williams noted that 41 C.F.R. § 102–118.35 "does not imbue a TSP, which is a subcontractor, with the right to recover payment from the Government for services provided in the absence of a contract between the Government and that party." 63 Fed.Cl. at 340. As Judge Williams explained, this interpretation of the regulation is supported by a more specific provision in the regulation, found at 41 C.F.R. § 102–118.205 (2004), which contains the following question and answer:

> May my agency pay a subcontractor or agent functioning as a warehouseman for the TSP providing service under the bill of lading?
>
> No, your agency may only pay the TSP *with whom it has a contract.* The bill of lading *will list the TSP with whom the Government has a contract.*

(emphasis added). Here, there is no dispute that Dispatch is the TSP with whom the government has a contract. Therefore, the latter regulation makes it clear that the former does not support recovery in the absence of a contract between the government and the subcontractor.

 Additionally, as Judge Williams notes, "the Government is not made liable, by implication, for payment to Plaintiff when it is clear from the face of each SBL that [another party was] *expressly* obligated to pay." *Central Transport*, 63 Fed.Cl. at 340 (emphasis in original) (*citing Fikse*, 23 Cl.Ct. at 204 ("[N]o implication of an agreement to pay could arise by acceptance in view of the express provisions obligating [the non-government entity that contracted with the plaintiff] to pay shipping charges")). Here, it is not disputed that the express terms of the SBLs obligated only Dispatch to pay the plaintiff. Thus, neither Section 13706 nor 41 C.F.R. § 102–118.35 provide a basis for this court's exercise of jurisdiction.[7,8]

---

7. Similarly, this court also rejects the plaintiff's argument that 49 U.S.C. § 13101 (1995), which sets forth broad transportation policy goals, provides a basis for Tucker Act jurisdiction. A statute "need not explicitly provide that the right or duty it creates is enforceable through a suit for

## IV. Conclusion

For the foregoing reasons, the defendant's motion to dismiss is **GRANTED**. The Clerk is directed to enter judgment accordingly. Each party is to bear its own costs.

damages, but it triggers liability only if it can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Navajo Nation*, —— U.S. ——, 129 S.Ct. 1547, 1552, 173 L.Ed.2d 429 (2009) (citations and internal quotation marks omitted); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (A federal statute grants this court subject matter jurisdiction only if it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." (citations and internal quotation marks omitted)). As no part of 49 U.S.C. § 13101 can be fairly interpreted as mandating compensation, this court holds that this statute provides no basis for jurisdiction.

8. As a final matter, the plaintiff argues in the alternative that it is entitled to recover for unjust enrichment. Ptf.'s Supp. Br. at 9 (*citing Perri v. United States*, 340 F.3d 1337, 1344 (Fed.Cir. 2003); *Prestex, Inc. v. United States*, 162 Ct.Cl. 620, 320 F.2d 367 (1963)). As the government asserts, a claim of unjust enrichment is equitable in nature and is not based on a contractual relationship. Def.'s Resp. at 9 (*citing Enron Fed. Solutions, Inc. v. United States*, 80 Fed.Cl. 382, 409 (2008) (further citation omitted)). Such a claim "is therefore based upon a contract implied in law, over which this court has not been given jurisdiction." *Id.* Therefore, the plaintiff's unjust enrichment claim does not provide this court with subject matter jurisdiction.