# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| UTi, United States, LLC | ) | ASBCA No. 60188 |
| | ) | |
| Under Contract No. 000000-00-0-0000 | ) | |

APPEARANCES FOR THE APPELLANT:  Dismas N. Locaria, Esq.
Melanie Jones Totman, Esq.
  Venable LLP
  Washington, DC

James Y. Boland, Esq.
  Venable LLP
  Tysons Corner, VA

APPEARANCES FOR THE GOVERNMENT:  Jeffrey P. Hildebrant, Esq.
  Air Force Deputy Chief Trial Attorney
Anna F. Kurtz, Esq.
Capt Justin D. Haselden, USAF
  Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE SWEET
## ON THE GOVERNMENT'S MOTION TO DISMISS

This is an appeal of a contracting officer's deemed denial of a claim by UTi, United States, Inc.[1] (UTi) for unpaid transportation and logistics services. The government has moved to dismiss, arguing that UTi is not in privity of contract with the government. We grant the motion, although we do so because we do not possess jurisdiction.

## STATEMENT OF FACT (SOF) FOR PURPOSES OF THE MOTION

1. The United States Transportation Command (USTRANSCOM or government) provides air, land, and sea transportation for the Department of Defense (DoD) (gov't mot., ex. Q at 1).

2. USTRANSCOM administers the Civil Reserve Air Fleet (CRAF) and Voluntary Intermodal Sealift Agreement (VISA) programs. Under the CRAF program,

---

[1] Following the filing of this appeal, UTi, United States, Inc., merged with UTi United States, LLC, which is the surviving entity, and the case caption is amended to reflect that merger. We refer to both entities as UTi.

United States flagged air carriers voluntarily agree to provide stand-by commitments to support mobilization. As an incentive to participate in the CRAF program, CRAF participants are eligible for contracts that satisfy the DoD's peacetime airlift requirements. The VISA program is similar to the CRAF program, but is open to United States flagged water carriers. (Gov't mot., ex. Q at 2)

3. As part of the CRAF and VISA programs, USTRANSCOM issued a request for proposals (RFP) for fixed-price, multiple award, indefinite-delivery/indefinite-quantity contracts for door-to-door transportation of government cargo, including airlift, sealift, and/or linehaul. The awardees would be limited to CRAF or VISA participants. (Gov't mot., ex. Q at 1)

4. In response to the RFP, World Airways, Inc.—a CRAF participant—submitted a proposal. World Airways' proposal indicated that it would be the prime contractor, and that UTi would be a subcontractor. (Gov't mot., ex. D at 7, 22-23)

5. USTRANSCOM awarded Contract No. HTC711-12-D-R007-P000011 to World Airways (World Airways contract). UTi was not a party to the World Airways contract. (Gov't mot., ex. A at 1) The World Airways contract required carriers to use bills of lading, and to designate the government as the cosignee (*id.* at 32).[2]

6. In 2013, USTRANSCOM issued nine requests for quotes (RFQs) for task orders under the World Airways contract to transport goods from Afghanistan to the United States (gov't mot., ex. F; compl. ¶ 15). UTi personnel responded to the RFQs with "World Airways Response[s]" to the RFQs (gov't mot., ex. F).

7. Based upon the RFQ responses, USTRANSCOM awarded task orders to several contractors, including World Airways (World Airways TOs). Neither UTi, its subcontractors, nor its sub-subcontractors were listed on the World Airways TOs.

---

[2] A bill of lading is a "[d]ocument evidencing receipt of goods for shipment issued by person engaged in business of transporting or forwarding goods.... An instrument in writing signed by a carrier or his agent, describing the freight so as to identify it, stating the name of the consignor, the terms of the contract for carriage, and agreeing or directing that the freight be delivered to the order or assigns of a specified person at a specified place. It is receipt for goods, contract for their carriage, and is documentary evidence of title to goods." BLACK'S LAW DICTIONARY, 168 (6th ed. 1990). The consignor is the shipper, or the one who sends goods. *Id.* at 307. The consignee is the one to whom goods are shipped. *Id.* A government bill of lading is an accountable transportation document that is authorized and prepared by a government official. 48 C.F.R. § 47.001. Unlike a government bill of lading, a commercial bill of lading is not an accountable transportation document.

2

(Gov't mot., exs. G-H) The World Airways TOs were for door-to-door shipments from military bases in Afghanistan to various military facilities in the United States (gov't mot., ex. H).

8. The shipments were multimodal, meaning they were performed in three segments using different modes of transportation (gov't mot., ex. F). First, UTi's subcontractors (2nd tier) or sub-subcontractors (3rd tier)—namely Zet Avia Airways, DFS Middle East, and Coyne Airways (collectively air carriers)—transported the goods by air from Afghanistan to the United Arab Emirates (UAE) (air segment) (compl. ¶ 30). The air carriers issued air waybills. The air carriers were parties to the air waybills. (*Id.*) UTi was not a party. (R4, tab 2)

9. Second, Liberty Global Logistics or American Roll-on-Roll-off carrier (collectively water carriers) transported the goods by sea from the UAE to ports in the United States (water segment) (compl. ¶ 22; R4, tab 2). The water carriers issued ocean bills of lading. The water carriers were parties to the ocean bills of lading. UTi was not a party. (R4, tab 2)

10. Third, unidentified linehaul carriers (land carriers) transported the goods by land from ports in the United States to various military facilities in the United States (land segment). UTi does not submit evidence—such as land segment bills of lading—establishing that the ports were in the same states as the military facilities. On the contrary, the invoices that UTi submitted in support of its claim show that, for at least about three quarters of shipments, the port was located in a different state than the military facility.[3] (R4, tab 2)

11. UTi acted as a non-vessel ocean common carrier (NVOCC) (gov't mot., ex. D at 36).[4] UTi alleges that "UTi performed all aspects of the World Contract,

---

[3] In particular, the invoices show that the port was located in a different state than the military facility for 31 of the 44 shipments—namely the shipments associated with invoice numbers: 29000105350-1, 29000076028-1, 29000091834-1, 29000065128-1, 29000103240-1, 29000104902-1, 29000104890-1, 29000109714-1, 29000045672-1, 29000105018-1, 29000045696-1, 29000104967-1/ 29000104961-1, 29000092232-1, 29000092257-1, 29000045808-1, 29000113890-1, 29000109678-1, 29000058511-1, 29000104786-1, 29000076128-1, 29000076109-1, 29000076123-1, 29000032237-3, 29000041899-1, 29000032236-3, 29000041890-1, 29000104852-1, 29000104884-1, 29000092180-1, 29000045822-1, and 29000041802-1 (R4, tab 2, exs. A-J, L-P, R-Z, CC-FF, KK, NN, QQ).

[4] An NVOCC is "a common carrier that...does not operate the vessels by which the ocean transportation is provided." 46 U.S.C. § 1702(17)(B). An NVOCC

incurring all transportation and required subcontractor costs" (compl. ¶ 5). Similarly, in its claim, UTi asserted that "UTi performed all aspects of the World Contract, incurring all transportation and required subcontractor costs" (R4, tab 1 at 1).

12. UTi issued a multimodal commercial bill of lading (UTi bill of lading) for 35 of the 44 shipments (UTi bill of lading shipments).[5] For 9 of the 44 shipments (non-UTi bill of lading shipments), UTi did not issue a bill of lading.[6] UTi's claim asserted that:

> [T]he bills of lading, issued by UTi, which covered
> door-to-door transportation of the goods (includ[ed] all
> necessary modes of transportation).... Under bills of

---

"contracts with its customers as principal, agreeing to transport their goods on a voyage that includes an ocean leg. An NVOCC commonly issues bills of lading to its customers in its own name, even though it does not operate the ship that will carry the goods on the ocean voyage. It buys space on the carrying ship like any other customer, receiving a bill of lading from the owner or charterer of that ship when the goods are loaded on board. It commonly consolidates goods from several different shippers into a single container, receiving a bill of lading from the water carrier in relation to the container as a whole.... The NVOCC does not contract with the owners of the goods as agent for the ship. Quite the reverse, it contracts with the water carrier as agent for the owners of the goods." MARTIN DAVIS, IN DEFENSE OF UNPOPULAR VIRTUES: PERSONIFICATION AND RATIFICATION, 75 Tul. L. Rev. 337, 395-96 (2000). Shippers may treat an NVOCC as a common carrier. *Ins. Co. of N. Am. v. M/V a/k/aOcean Lynx*, 901 F.2d 934, 937 n.2 (11th Cir. 1990).

[5] The UTi bill of lading shipments were the shipments associated with invoice numbers: 29000105350-1, 29000076028-1, 29000091834-1, 29000065128-1, 29000103240-1, 29000104902-1, 29000104890-1, 29000109714-1, 29000045672-1, 29000105018-1, 29000045696-1, 29000104967-1/ 29000104961-1, 29000092232-1, 29000092257-1, 29000045808-1, 29000049049-3, 29000113890-1, 29000109678-1, 29000058511-1, 29000104786-1, 29000076128-1, 29000076109-1, 29000076123-1, 29000104827-1, 29000092197-1, 29000104852-1, 29000104884-1, 29000045066-1, 29000041954-1, 29000041953-1, 29000045400-1, 29000045287-1, 29000104985-1, 29000105330-1, and 29000046612-1 (R4, tab 2, exs. A-J, L-X, AA-BB, EE-JJ, LL-MM, PP, SS).

[6] The non-UTi bill of lading shipments were the shipments associated with invoice numbers: 29000075957-1/29000075958-2, 29000104827, 29000041899-1, 29000032236-3, 29000041890-1, 29000092180-1, 29000045822-1, 29000041802-1, and 29000045789-1 (R4, tab 2, exs. K, Y-Z, CC-DD, KK, NN, QQ-RR).

lading, the carrier takes responsibility and liability of the goods "for the entire journey and over all modes of transportation." [*Estes Express*]. Thus, in issuing bills of lading, UTI assumed ultimate liability of the transportation of the goods through multiple modes of transportation.

(R4, tab 1 at 3) Government representatives did not sign the UTi bills of lading (R4, tab 2). However, UTi made the UTi bills of lading available to the government through the *U*Trac and eMPower cargo tracking systems (gov't mot., ex. D at 44, 52, 101).

13. Government representatives signed the UTi delivery notices (gov't mot., ex. C at 27-38).

14. USTRANSCOM paid World Airways in full for the shipments (gov't mot., ex. N).

15. World Airways did not completely pay UTi for the shipments, apparently having gone bankrupt (compl. ¶¶ 3, 38).

16. On 24 June 2015, UTi filed a certified claim with the contracting officer. In its claim, UTi asserted that "[t]hrough these bills of lading, the government and UTi formed direct, free standing contractual relationships apart from the World contract that is the basis of UTi's claim against the government." (R4, tab 1)

17. Based upon a deemed denial of that claim, UTi filed this appeal (compl. ¶¶ 8, 12).

18. In its complaint, UTi alleges that "UTi and its subcontractors issued bills of lading that formed a direct, free-standing contractual relationship between UTi and USTRANSCOM" (compl. ¶ 6). UTi alleges that USTRANSCOM breached those express agreements by failing to pay for the shipments (*id.* ¶¶ 39-46, 52). In the alternative, UTi alleges that USTRANSCOM breached an implied contract (*id.* ¶¶ 47-52). UTi alleges that we possess jurisdiction over its breach of contract claims under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109 (*id.* ¶ 11).

19. The government moved to dismiss for lack of jurisdiction, arguing that there is no privity of contract. Thereafter, we ordered the parties to brief the issue of whether any contract was subject to the Interstate Commerce Act of 1887, as amended by the Transportation Act of 1940 (collectively ICA/Transportation Act), and thus not subject to our jurisdiction under the CDA. The parties submitted such briefing.

## DECISION

We do not possess jurisdiction over this appeal because any contracts are subject to the ICA/Transportation Act. There are several mechanisms the government

may use to acquire transportation services, including negotiated contracts or bills of lading. 48 C.F.R. § 47.000(a)(2); *Maersk Line Ltd.*, ASBCA No. 55391, 07-2 BCA ¶ 33,621 at 166,520, 166,522. Both the Federal Acquisition Regulation (FAR) and our precedent draw a sharp distinction between acquisitions using negotiated contracts and acquisitions using transportation forms, such as bills of lading. *Id.*; *see also Maersk Line Limited, Inc.*, ASBCA No. 58779, 14-1 BCA ¶ 35,589 at 174,385-87; *Eimskipafeleg Island, ehf*, ASBCA No. 55209, 07-2 BCA ¶ 33,620 at 166,517-18. That distinction is significant because the FAR applies to acquisitions using negotiated contracts, while the ICA/Transportation Act applies to acquisitions using bills of lading. As the FAR states, it applies to:

> Acquiring transportation or transportation-related services by contract methods *other than bills of lading,* transportation requests, transportation warrants, and similar transportation forms. Transportation and transportation services can be obtained by acquisition subject to the FAR *or* by acquisition under [the ICA/Transportation Act].... *[T]he FAR does not regulate the acquisition of transportation or transportation-related services when the bill of lading is the contract....*

48 C.F.R. § 47.000(a)(2) (emphasis added).

Whether the FAR or ICA/Transportation Act applies to an acquisition, in turn, is important because that fact dictates whether we possess jurisdiction over a dispute regarding that acquisition. On the one hand, we possess jurisdiction under the CDA to hear disputes regarding an acquisition governed by the FAR. *Maersk Line Limited,* 14-1 BCA ¶ 35,589 at 174,386; *Maersk Line Ltd.*, 07-2 BCA ¶ 33,621 at 166,520; *Eimskipafeleg Island,* 07-2 BCA ¶ 33,620 at 166,518-19. On the other hand, we do not possess jurisdiction to hear disputes regarding an acquisition governed by the ICA/Transportation Act because the ICA/Transportation Act provides its own dispute resolution procedure, which is not supplanted by the CDA. *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017-18 (Fed. Cir. 1995); *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1369 (Fed. Cir. 2002). Because bill of lading acquisitions are governed by the ICA/Transportation Act, and we do not possess jurisdiction over disputes regarding acquisitions governed by the ICA/Transportation Act, we do not possess jurisdiction over disputes regarding bill of lading acquisitions. 48 C.F.R. § 47.000(a)(2); *Maersk Line Limited,* 14-1 BCA ¶ 35,589 at 174,386 ("payment disputes under non-FAR-based contracts are governed by [the ICA/Transportation Act] and its implementing regulations"); *Maersk Line Ltd.*, 07-2 BCA ¶ 33,621 at 166,520, 166,522; *Eimskipafeleg Island,* 07-2 BCA ¶ 33,620 at 166,518 ("Transportation Act-based services have been limited to those transportation services provided by way of [bills of lading] and tender agreements.").

Here, the government acquired transportation services through bills of lading (SOF ¶ 18). Therefore, the acquisition is not subject to the FAR and the CDA, but instead is governed by the ICA/Transportation Act. As a result, we do not possess CDA jurisdiction over this dispute.[7]

UTi argues that this acquisition is not subject to the ICA/Transportation Act because the land carriers it used only operated intrastate, so it was not a freight forwarder under the ICA/Transportation Act (app. supp. br. at 3-6; 49 U.S.C. § 13102(8), § 13501).[8] That argument fails legally and factually. Legally, we have held that "the CDA governs resolution of disputes related to FAR-based transportation contracts, and [the ICA/Transportation Act] governs resolution of claims related to Transportation Act non-FAR-based contracts." *Maersk Line Ltd.*, 07-2 BCA ¶ 33,621 at 166,526. Thus, under the FAR and our precedent, the dispositive issue for purposes of determining whether an acquisition is subject to the CDA or ICA/Transportation Act is whether the contracting method was a FAR contract or a bill of lading; not whether there was interstate transportation. *Id.*; 48 C.F.R. § 47.000(a)(2); *Maersk Line Limited* 14-1 BCA ¶ 35,589 at 174,386; *Eimskipafeleg Island*, 07-2 BCA ¶ 33,620 at 166,518. Factually, UTi has not presented evidence establishing that the land carriers only operated intrastate. (SOF ¶ 10). On the contrary, the evidence shows that, at least for most of the shipments, the land carriers transported property interstate (SOF ¶ 10).[9]

---

[7] Where—as here—an acquisition is subject to the ICA/Transportation Act, we do not possess jurisdiction over disputes regarding that acquisition based upon an implied contract theory. *AIT Worldwide Logistics, Inc.*, ASBCA No. 54763, 06-1 BCA ¶ 33,267 at 164,860.

[8] Contrary to UTi's argument (app. supp. br. 4), the fact that UTi was an NVOCC does not preclude it from also being a freight forwarder under the ICA/Transportation Act. *IML Sea Transit, LTD v. United States*, 343 F. Supp. 32, 35-36 (N.D. Cal. 1972). Also unconvincing is UTi's attempt to minimize its role regarding the land segment (app. supp. sur-reply at 2-4). That argument is inconsistent with the claim's assertion that the UTi bills of lading "covered *door-to door* transportation of the goods (including *all* necessary modes of transportation)" (SOF ¶ 12 (emphasis added); *see also id.* ("in issuing bills of lading, UTI assumed ultimate liability of the transportation of the goods through multiple modes of transportation.")). It also is inconsistent with the complaint's allegation that "UTi performed *all* aspects of the World [Airways] Contract, including *all* transportation" (*id.* ¶ 11 (emphasis added)).

[9] *DHX, Inc. v. Surface Transportation Board*, 501 F.3d 1080, 1082 (9th Cir. 2007)—upon which UTi relies—is not relevant because that case addresses the jurisdiction of the Surface Transportation Board over noncontiguous domestic trade; not our jurisdiction over disputes regarding bill of lading acquisitions.

UTi also argues that we possess jurisdiction because the bills of lading were issued in connection with a FAR contract—namely the World Airways contract (app. supp. br. at 9-13). UTi cannot have it both ways. In an attempt to establish privity,[10] UTi asserts that the contractual bases for this appeal are the bills of lading, and not the World Airways contract. In its claim, UTi asserted that "[t]hrough these bills of lading, the government and UTi formed direct, free standing contractual relationships apart from the World [Airways] contract that is the basis of UTi's claim against the government" (SOF ¶ 16). Similarly, in its complaint, UTi alleges that UTi and its subcontractors "issued bills of lading that formed a direct, free-standing contractual relationship between UTi and USTRANSCOM" (SOF ¶ 18). And in its opening brief, UTi argues that "UTi is not appealing the denial of a claim by UTi as a mere subcontractor under the World [Airways] Contract. Rather, UTi filed a claim with USTRANSCOM as a direct contractor with the Government either through an express contract via its bills of lading, or, alternatively, through an implied-in-fact contract." (App. br. at 2) Having repeatedly and emphatically asserted for privity purposes that the contracts at issue here are the bills of lading—and not the World Airways contract—UTi cannot turn around and avail itself of the World Airways contract to establish jurisdiction. Because it was not a party to the World Airways contract, UTi lacks the privity with which to rely upon the World Airways contract to establish jurisdiction (SOF ¶ 5).

## CONCLUSION

The motion to dismiss is granted. The appeal is dismissed for lack of jurisdiction.

Dated: 12 December 2017

James R. Sweet
_____
JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[10] Moreover, even assuming that the UTi bills of lading established privity under *Estes Express Lines v. United States*, 739 F.3d 689 (Fed. Cir. 2014), there would not be privity for the non-UTi bill of lading shipments because UTi did not issue bills of lading for those shipments (SOF ¶ 12).

I concur                                                I concur

RICHARD SHACKLEFORD                                     OWEN C. WILSON
Administrative Judge                                    Administrative Judge
Acting Chairman                                         Vice Chairman
Armed Services Board                                    Armed Services Board
of Contract Appeals                                     of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60188, Appeal of UTi, United States, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9