ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Fidelity & Deposit Company of Maryland | ) | ASBCA No. 63278 |
| | ) | |
| Under Contract No. W912ER-11-D-0010-0006 | ) | |

APPEARANCES FOR THE APPELLANT:   Robert C. Niesley, Esq.
                   Rebecca S. Glos, Esq.
                    Watt, Tieder, Hoffar & Fitzgerald, LLP
                    Irvine, CA

APPEARANCES FOR THE GOVERNMENT:  Michael P. Goodman, Esq.
                    Engineer Chief Trial Attorney
                    Michael E. Taccino, Esq.
                    Rebecca L. Bockmann, Esq.
                    Engineer Trial Attorneys
                    U.S. Army Engineer District, Winchester

OPINION BY ADMINISTRATIVE JUDGE TAYLOR

Fidelity and Deposit Company of Maryland (F&D or appellant) seeks monetary damages in the amount of $1,604,384.24 from the United States Army Corps of Engineers (USACE or the government) resulting from the government's alleged delay of its completion contractor's performance under task order Contract No. W912ER-11-D-0010-0006 (the task order), withheld liquidated damages and certain contractual changes (compl. ¶ 84). The task order was for the design and construction of transient quarters and dining facilities at the Naval Support Activity Bahrain (R4, tab 5 at 5-7, 57). The USACE moves to dismiss the appeal for lack of subject matter jurisdiction contending appellant failed to submit a sum certain amount for each of its alleged seven separate claims based on distinct operative facts in accordance with the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109 (gov't mot. at 2). For the reasons discussed below, we deny the motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION[1]

## I. The Contract/Task Order

1. On June 16, 2011, the USACE awarded an Indefinite Delivery/Indefinite Quantity Contract No. W912ER-11-D-0010 (the contract) to ECC CENTCOM Constructors (ECC) for design-build construction projects in the U.S. Central Command Area of Responsibility under which firm-fixed price task orders could be issued (R4, tab 4 at 1).

2. On September 11, 2013, the USACE awarded ECC a fixed-price task order under the contract for the design and construction of transient enlisted quarters (TEQ) and an officer dining facility (DFAC) at the Naval Support Activity (NSA) Bahrain (R4, tab 5 at 1, 5-7).

3. The contract incorporated by reference FAR 52.233-1, DISPUTES (JUL 2002) (R4, tab 4 at 13), which states in pertinent part:

> (c) Claim, as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract.

48 C.F.R. § 52.233-1.

## II. Government's Termination of ECC and F&D Takeover

4. On April 19, 2016, the government terminated ECC's right to proceed with the contract work for failing to meet construction progress schedules, failing to diligently prosecute the work, and failing to complete the work by the required date (R4, tab 8 at 2-3).

5. Subsequently, the Government and F&D, ECC's surety on the contract, entered into a takeover agreement in which F&D agreed to undertake and arrange for the "performance of the work remaining under the Contract . . ." (R4, tab 6 at 1). F&D

---

[1] Typically, we would not go into such detail about the alleged facts of the merits case in a motion to dismiss on jurisdictional grounds, but here, the government is arguing that those facts lead to the conclusion that there are multiple independent claims, thus, we include them without drawing any conclusions upon whether they will be proved at the merits stage.

selected and the government approved the Vertex Companies, Inc., (Vertex) as the completion contractor (R4, tab 6 at 3). The completion date for the remaining work pursuant to the takeover agreement was August 15, 2017 (R4, tab 7 at 3). The project scope for the remaining work included installing underground site utilities to service the newly constructed TEQ and DFAC buildings (R4, tab 2 at 2; compl. ¶ 25).

### III. Vertex's Performance of the Remaining Site Utility Work

6. In order to complete the remaining underground site utility work, Vertex was required to obtain an approved dig permit (R4, tab 2 at 2; compl. ¶ 28).

7. On September 4, 2016, the NAVFAC Public Works Department (PWD) issued a dig permit to Vertex to complete the remaining site utility work at both the TEQ and DFAC buildings (app. supp. R4, tab 12). The dig permit included a proposed start date of September 20, 2016, and a proposed end date of December 10, 2016 (app. supp. R4, tab 12 at 1; compl. ¶ 30). The dig permit also indicated the traffic on the southeast side of the project would be closed as per the attached drawings, and the two-way traffic roads would be fully closed by a Class I type barrier with traffic rerouted (app. supp. R4, tab 12 at 3).

8. Following its receipt of the approved dig permit, Vertex, through its subcontractor, began the site utility work (compl. ¶ 32).

9. On December 20, 2016, Mr. Hamsar Manupac, the USACE project engineer, verbally directed Mr. Joseph House, the Vertex construction manager, to stop the exterior electrical work on the project (app. supp. R4, tab 14 at 1; compl. ¶ 33).[2] Mr. Manupac further informed Mr. House that discussions were taking place with the base PWD that could result in changes to the project's scope of work (app. supp. R4, tab 14 at 1; compl. ¶ 34).

10. Vertex informed the USACE's contracting officer that it was stopping all work related to the main electrical service in compliance with the verbal stop work notice (app. supp. R4, tab 14 at 1; compl. ¶ 35).

11. On January 30, 2017, Mr. Manupac verbally directed Vertex to submit a new dig permit covering the same scope of work set forth in the September 2016 dig permit. Mr. Manupac indicated this permit was necessary to document delays caused by PWD. (Compl. ¶ 36)

---

[2] The Board notes the December 20, 2016, purported stop work direction occurred after the September 20, 2016, dig permit's proposed completion date of December 10, 2016 (app. supp. R4, tab 12 at 1). Apparently, Vertex continued with the TEQ and DFAC site utility work even though the dig permit's proposed completion date had passed.

12. On February 15, 2017, Vertex submitted a new dig permit on the project (app. supp. R4, tab 16 at 1; compl. ¶ 37). The next day, Vertex, at USACE's direction, apparently submitted a revised dig permit removing any work related to the site utility connection to building P22 (app. supp. R4, tab 16 at 6-16; compl. ¶ 38-39).

13. On February 27, 2017, Mr. Manupac informed Vertex that no dig permit for outside electrical work for the area presented in the request would be approved at that time, and the government would consider a new separate dig permit only for the communication work (app. supp. R4, tab 16 at 3; compl. ¶ 41). USACE also allegedly advised Vertex that the base PWD would allow the road along the north side of the project site to be closed for a maximum period of two weeks (compl. ¶ 42).

14. On March 9, 2017, Vertex submitted another dig permit (app. supp. R4, tab 17). Apparently, Vertex submitted this new dig permit to complete the remaining DFAC exterior electrical distribution system and associated connection work to Building P-22 (compl. ¶ 48). This dig permit indicates a proposed start date of March 25, 2017, and a proposed completion date of June 25, 2017 (app. supp. R4, tab 17 at 1).

15. On March 15, 2017, Vertex submitted a letter to the USACE contracting officer entitled "Continuing Dig Permit Delays." In that letter, Vertex informed the contracting officer that the government had failed to respond to its March 9th dig permit request. Vertex also informed the contracting officer that this work was now "the critical path for completion of the project" and provided an attached critical path schedule. Vertex further informed the contracting officer that the work could not "begin until an approved dig permit is received." Vertex indicated the lack of an approved dig permit was delaying the work and pushing the completion date until November 14, 2017. (App. supp. R4, tab 18)

16. In letters dated April 12, 2017, and May 1, 2017, Vertex informed the USACE contracting officer that it was waiting on the government's approval of its dig permit. Both letters were entitled "Continuing Dig Permit Delays and Resulting Schedule Delays." In both letters, Vertex reiterated that the lack of approved dig permits continued to delay the project's critical path schedule and consequently, the project completion date. (App. supp. R4, tabs 20, 21; compl. ¶ 54, 56-57)

17. On May 2, 2017, Vertex formally submitted to USACE its redesign for the electrical and telecommunications manholes to comply with the new requirement that road closures during the installation of the electrical and telecommunications utility work not exceed two weeks (app. supp. R4, tab 22; compl. ¶ 58).

18. By letter dated May 22, 2017, the USACE contracting officer accepted Vertex's redesign proposal for the relocation of the electrical and communication utility holes and indicated the proposal would result in no additional cost to the government (app. supp. R4, tab 24).

19. Vertex disagreed with the USACE assertion that the revised project would not result in additional costs. In a letter, Vertex stated, "there would indeed be both cost and schedule impacts due to the base Public Works Department not issuing the required dig permits for this and other electrical and communications duct back work." (App. supp. R4, tab 25 at 1)

20. In another letter dated May 22, 2017, the USACE contracting officer responded to Vertex's previous letters expressing concern with the delay in the dig permit approval. In that letter, the government acknowledged the dig permit delay was impacting the outside cabling installation. The government, however, determined Vertex's current schedule and progress on site for the electrical activities did not warrant an equitable adjustment. The letter stated, "The current progress of the electrical work inside the building and the critical path analysis as presented did not support the claim that the delay in dig permit affects the delay on the incomplete electrical installations inside the building." (App. supp. R4, tab 26)

21. Vertex responded, indicating there were both cost and schedule impacts "due to this issue" (app. supp. R4, tab 27).

22. In a letter dated June 18, 2017, the USACE contracting officer responded to Vertex's previous letters. The contracting officer referenced the government's previous letters in which "the Government had acknowledged the delay on issuing the dig permit is by the Government." The contracting officer, however, also indicated the contractor's progress and work completion were not affected by the delay since Vertex's electrical work inside the building was deficient. The contracting officer referred to the delay resulting from the dig permit approvals as "this issue." (App. supp. R4, tab 28)

23. On June 21, 2017, Vertex responded to the contracting officer's letter reiterating that the work on the TEQ building's electrical and communication distribution systems was delayed "due to dig permit issues." Vertex also indicated that dig permit delays continued related to the DFAC building. (App. supp. R4, tab 29 at 1-2)

24. On August 1, 2017, Vertex submitted a new dig permit for the redesigned TEQ distribution system (app. supp. R4, tab 30; compl. ¶ 70). This permit indicated a start date of August 22, 2017, and a completion date of September 11, 2017 (app. supp. R4, tab 30 at 1).

25. The government approved the new dig permit on August 7, 2017 (compl. ¶ 70).

5

Vertex resumed its work on the suspended TQ electrical site utility work on August 22, 2017 (compl. ¶ 82).

26. On September 5, 2017, the government verbally notified Vertex that it would consider a new dig permit for the remaining DFAC work and directed Vertex to submit a request for a new permit (compl. ¶ 77).

27. Vertex submitted a new dig permit for that work, which the government approved on September 9, 2017. The new dig permit included a start date of September 21, 2017, for the DFAC work. (Compl. ¶ 79)

## IV. F&D's Certified Claim and Request for Contracting Officer's Final Decision

28. On March 25, 2021, F&D submitted to the contracting officer a certified claim asserting damages totaling $1,604,384.24 (the claim) (R4, tab 2 at 19). The claim was entitled, "Request for Contracting Officer's Final Decision re Dig Permit Delay Claim" (R4, tab 2 at 1). The claim further indicated it was for "among other things, 146-days of compensable delays under Contract No. W912ER-D-0010-0006" (R4, tab 2 at 1). The claim asserted F&D "suffered these days of delay and corresponding overhead damages as a result of the United States Army Corps of Engineers' ("USACE"): (1) issuance of a stop work notice; (2) failure to acknowledge and respond to compliant permit requests; and (3) introduction of non-contractual duration restrictions on critical utility work." (R4, tab 2 at 1)

29. The claim further provided an extensive factual background section setting forth numerous details regarding Vertex's efforts to complete the installation of the underground site utilities to service the newly constructed TQE and DFAC buildings (R4, tab 2 at 1-8).

30. F&D's claim concluded with a damages section. In that section, F&D stated the following: "Due to the above detailed schedule delay of 146 days, F&D requests: (1) the contract duration be extended by a corresponding 146 days; (2) F&D be compensated for the following costs as outlined below; and (3) liquidated damages withheld for this delay period be released." F&D also provided a chart setting forth its damages:

| Damages | QTY | Unit | Unit Rate | |
|---|---|---|---|---|
| Vertex/Surety General Conditions[12] | 146 | Days | $ 7,816.61 | $ 1,141,225.24 |
| TX ASI-0035 Redesign Costs[13] | 1 | LS | $ 4,897.00 | $ 4,897.00 |
| Kooheji Constructors, WLL ASI-0035 Costs[14] | 1 | LS | $ 24,405.00 | $ 24,405.00 |
| Withheld Liquidated Damages | 181 | Days | $ 2,397.00 | $ 433,857.00 |
| **Total** | | | | **$ 1,604.384.24** |

(R4, tab 2 at 19)

31. F&D calculated its claimed delay damages from the stop work order date until the new dig permit start date (R4, tab 2 at 11). Specifically, appellant calculated the delay period as 245-days from December 20, 2016, until August 22, 2017 (R4, tab 2 at 11). Appellant asserted the critical path was delayed a total of 146-days due solely to the late dig permit approval (R4, tab 2 at 11).

32. F&D's claim also alleged USACE advised Vertex that the base PWD would allow the road along the north side of the project site to be closed for a maximum period of two weeks (R4, tab 2 at 4). F&D alleges this was a change to the contract under FAR 52.243-4 (R4, tab 2 at 4). As a result of this alleged contract change, Vertex submitted a new redesign for the electrical and telecommunications manholes to comply with the new requirement that road closures during the installation of the electrical and telecommunications utility work not exceed two weeks (app. supp. R4, tab 22; compl. ¶ 58). F&D's claim included $4,897.00 for redesign costs resulting from this alleged contract change and $24,405.00 for its subcontractor's costs incurred relocating the manholes due to this new contract restriction (app. opp'n at 12-13).

33. F&D's claim included a contractor certification indicating, among other things, that "the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable." (R4, tab 2 at 20)

### V. Contracting Officer's Final Decision

34. The contracting officer, Mr. Kenneth Baker, responded to F&D's claim with a contracting officer's final decision (COFD) dated February 16, 2022 (R4, tab 3). In the COFD, Mr. Baker determined F&D sought seven different delay claims and one claim for costs associated with the redesign necessitated by the requirement that road closures on the north side of the project not exceed two weeks (R4, tab 3 at 1). The contracting officer concluded F&D failed to set forth a sum certain for each of the different delay claims, and thus, had failed to provide the necessary information for him to assess each claim (R4, tab 3 at 1).

7

35. The contracting officer also determined F&D failed to provide the necessary data assessing the schedule impact from any of the alleged delay claims, sufficient information to assess the claim for releasing the liquidated damages and information regarding its attempts to mitigate its own delays (R4, tab 3 at 1-2).

36. F&D filed a timely appeal of the COFD on May 10, 2022.

## PARTIES' CONTENTIONS

The government moved to dismiss the appeal asserting appellant failed to set forth a sum certain for each of seven separate delay claims (gov't mot. at 2). The government noted F&D's claim falls into three distinct categories or "causes of delay" including the government's issuance of a stop work notice, failure to acknowledge and respond to permit requests, and the introduction of non-contractual duration restrictions on critical utility work (gov't mot. at 11). The government further contends the three causes of delay comprise seven alleged government actions or inactions each involving their own set of operative facts: (1) the project engineer's December 20, 2016, "stop work notice"; (2) the project engineer's January 30, 2017, verbal direction to submit another dig permit request; (3) the project engineer's direction to modify the February 15, 2017, dig permit request; (4) USACE's "additional changes to the scope of work"; (5) USACE's lack of response to Vertex's March 9, 2017, dig permit request; (6) the PWD contract change that road closures on the north side of the project not exceed two weeks; and (7) lack of USACE direction as to whether Vertex will be allowed to proceed with the electrical and communication service work (gov't mot. at 1).[3] The government concludes each of these seven events is a separate claim for which appellant should have included a separate sum certain amount (gov't mot. at 12).

The appellant responds that these seven events are not separate "claims" but rather part of a singular set of facts: "USACE's interference with F&D's work by revoking a previously issued dig permit and subsequently issuing a new dig permit, with new restrictions and a new start date, several months later" (app. opp'n at 1-2). Appellant further contends the seven different "claims" are "nothing more than details" surrounding its delay claim (app. opp'n at 2).

In its reply brief, the government responds appellant's assertion that its claim involves the government's revocation of a dig permit and subsequent issuance of a new permit is a new claim that was never presented to the contracting officer (gov't reply

---

[3] The government does not articulate how the alleged seven distinct claims fit within the three identified delay categories.

at 2). As such, the government contends F&D's new claim should be rejected (gov't reply at 2).

## DECISION

By and large, F&D submitted a garden variety delay claim of the sort that would typically garner little attention. Nevertheless, the government moves to dismiss the appeal asserting appellant failed to submit a sum certain amount for each of the alleged seven distinct separate claims in accordance with the CDA, 41 U.S.C. §§ 7101-7109 (gov't mot. at 19). We deny the government's motion because appellant's delay claim, as discussed below, arises from one set of related operative facts and is not seven distinct separate claims. Moreover, to the extent appellant's claimed costs resulting from the redesign necessitated by the alleged changed road closure requirement is a separate claim, appellant identified a separate sum certain for those costs (SOF ¶ 32). We find appellant provided a sufficient certified sum certain for its claim (SOF ¶ 30 & 33).

### Standard of Review

As the proponent of the Board's jurisdiction, F&D bears the burden of proof to establish our jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *see also BCC-UIProjects-ZAAZTC Team JV*, ASBCA No. 62846, 22-1 BCA ¶ 38,119 at 185,171. That burden extends to showing any demand for money was stated in a sum certain. *Naseem Al-Oula Co.*, ASBCA No. 61321 *et al.*, 20-1 BCA ¶ 37,490 at 182,148. In deciding a motion to dismiss, we also "accept as true all undisputed facts in the complaint and draw all reasonable inferences in favor of the non-moving party." *BCC-UIProjects-ZAATC Team JV*, 22-1 BCA ¶ 38,119 at 185,171 (citing *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014)).

### F&D Asserted A Single Delay Claim Based Upon the Same Set of Operative Facts

Under the CDA, our jurisdiction depends upon the contractor's submission of a claim to the contracting officer. 41 U.S.C. § 7103(a)(1); *See also Naseem Al-Oula Company*, 20-1 BCA ¶ 37,490 at 182,148. The contract incorporated by reference FAR 52.233-1, DISPUTES (JUL 2002) (SOF ¶ 3). The "Disputes" clause defines a claim, in part, as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." *See* FAR 52.233-1, DISPUTES (JUL 2002). While a CDA claim need not be submitted in any particular form or use any particular wording, it must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc., v. United States*, 811 F.2d 586, 592 (Fed.

9

Cir. 1997); *See also Sauer, Inc.*, ASBCA No. 60366, 16-1 BCA ¶ 36,565 at 178,101 (citing *Versar, Inc.*, ASBCA No. 56857, 10-1 BCA ¶ 34,437 at 169,957 (contracting officer "must have 'adequate notice' of the basis and amount of the claim")).

One contract may give rise to numerous claims. *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990). The jurisdictional standard for a sum certain amount must be applied to each claim and not to the entire case. *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015). "Congress did not intend the word 'claim' to mean the whole case between the contractor and the Government; but, rather, that 'claim' mean each claim under the CDA for money that is one part of a divisible case." *K-Con Bldg. Sys., Inc.* at 1005 (quoting *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1281 (Fed. Cir. 1985)). The Federal Circuit has noted that the requirement for each claim to meet the CDA's jurisdictional requirements is important to ensure contracting officers are given the opportunity to rule on individual claims knowing the relief sought and what substantive issues are raised by that claim. *K-Con Bldg. Sys., Inc.* at 1006. Accordingly, a contractor must state and certify a sum certain amount for each separate claim for us to have jurisdiction over that claim. *ECC International Constructors, LLC.*, ASBCA No. 59586, 21-1 BCA ¶ 37,862 at 183,855.

In determining whether a single or multiple claims exist, we must examine whether the claim is based on a common or related set of operative facts. *Placeway Constr. Corp.*, 920 F.2d at 907 ("To determine whether two or more separate claims, or only a fragmented single claim exists, the court must assess whether or not the claims are based on a common or related set of operative facts"). Moreover, if we must review the same or related evidence to make our decision on the appeal, then only one claim exists. *See Kinetic Builder's, Inc. v. Peters,* 226 F.3d 1307*,* 1312 (2000) (citing *Placeway* at 907 ("If the court will have to review the same or related evidence to make its decision, then only one claim exists.")).

In its March 25, 2021, claim, appellant sought a contract extension of 146-days and monetary damages in the amount of $1,604,384.24 resulting from the government's alleged delay of its completion contractor's performance under the task order, withheld liquidated damages and contract changes (SOF ¶ 30). Specifically, appellant indicated its completion contractor was unable to make progress on the underground electrical and communication distribution work for a 245-day period from December 20, 2016, until August 22, 2017, due to the issues surrounding the dig permit (SOF ¶ 31). Appellant claimed it suffered these days of delay and corresponding overhead damages due to the government's (1) issuance of a stop work notice; (2) failure to acknowledge and respond to compliant permit requests; and (3) the introduction of non-contractual duration restrictions on critical utility work (SOF ¶ 28). Appellant quantified its damages as:

| | |
|---|---|
| Vertex/Surety General Conditions | $1,141,225.24 |
| TX ASI-0035 Redesign Costs | $ 4,897.00 |
| Kooheji Constructors Costs | $ 24,405.00 |
| Withheld Liquidated Damages | $ 433,857.00 |
| Total | $1,604,384.24 |

SOF ¶ 30). Appellant provided a contractor certification under 48 C.F.R. § 33.207 (SOF ¶ 33). Appellant also provided numerous exhibits in support of its claim (R4, tab 2 at 21-3046).

In determining a claim's scope, we are not limited to the claim document but can examine the totality of the circumstances. *See Sauer, Inc*., ASBCA No. 60366, 16-1 BCA ¶ 36,565 at 178,101 (citing *Versar, Inc*., ASBCA No. 56857, 10-1 BCA ¶ 34,437 at 169,957). While appellant's delay claim did not explicitly state the government revoked the dig permit, that claim included numerous facts and events surrounding the alleged delay associated with the electrical and communications site utility work. (R4, tab 2 at 2-8). Appellant's delay claim gave the contracting officer adequate notice to examine and evaluate the claim.

Appellant's delay claim covered the period from the USACE's project engineer's December 20, 2016, verbal order to stop all electrical and communications site utility work until August 22, 2017, the date the appellant was again authorized to proceed following approval of its new August 1, 2017, dig permit (a 245-day period) (SOF ¶ 31).[4] Appellant alleges the government project engineer informed Vertex on December 20, 2016, that the PWD was considering making changes to the scope of the project, and therefore, Vertex should cease all related work (SOF ¶ 9). Vertex apparently needed an approved dig permit to complete the site utility and communications work (SOF ¶ 6). Appellant claims Vertex stopped work on the project's exterior electrical scope of work and all work related to the main electrical service in compliance with the alleged verbal stop work order (SOF ¶ 10).

While the verbal stop work order did not explicitly state the government was revoking the prior dig permit, the government project engineer's direction appears to have had that effect. Vertex apparently performed the site utility work in accordance with the previously approved September 4, 2016, dig permit (SOF ¶ 8). The stop work notice directed Vertex to cease all related work on the electrical and communications site utility work (SOF ¶ 9). The government project engineer further explained the stop work directive was necessitated by PWD's contemplated changes to the scope of

---

[4] Appellant's claim acknowledged the existence of concurrent delays resulting in a delay to the critical path due solely to the stop work order and late dig permit approval of 146-days of compensable delay (SOF ¶ 31).

work (SOF ¶ 9).  The government's stop work notice clearly implicitly revoked the prior dig permit.

The appellant's delay claim then discusses its various attempts to get a new dig permit approved so that it could continue the site utility work (R4, tab 2 at 3-8).  First, the government directed Vertex to submit another dig permit covering the same scope of work set forth in the September 4, 2016, permit to document the delays caused by PWD's change to the scope of work (SOF ¶ 11).  Vertex submitted the requested dig permit on February 15, 2017, and another revised permit the next day (SOF ¶ 12).  The government then apparently informed Vertex the revised dig permit would not be approved (SOF ¶ 13).  On March 9, 2017, Vertex submitted yet another dig permit (SOF ¶ 14).

In a letter dated May 22, 2017, the USACE contracting officer acknowledged the delay in the dig permit was impacting the outside cabling installation (SOF ¶ 20).  The contracting officer, however, determined the dig permit delays did not entitle Vertex to an equitable adjustment due to the current progress of the electrical work inside the buildings and the critical path analysis (SOF ¶ 20).

In another letter dated June 18, 2017, the USACE contracting officer again acknowledged the Government's delay in issuing the dig permit (SOF ¶ 22).  The contracting officer also determined Vertex's progress and work completion were not affected by this delay due to various problems with the electrical work inside the buildings (SOF ¶ 22).

On August 1, 2017, Vertex submitted a new dig permit for the redesigned TEQ distribution system (SOF ¶ 24).  The permit indicated a start date of August 22, 2017, and a completion date of September 11, 2017 (SOF ¶ 24).  The government approved the dig permit on August 7, 2017 (SOF ¶ 25), and appellant once again began the exterior electrical work on August 22, 2017 (SOF ¶ 25).  The facts surrounding the revocation and issuance of the utility work dig permits appear to be part of the common or related set of operative facts surrounding appellant's delay claim.

Moreover, appellant calculated its claimed delay damages from the stop work order date until the new dig permit start date (SOF ¶ 31).  Specifically, appellant calculated the delay period as 245-days from December 20, 2016, until August 22, 2017 (SOF ¶ 31).  Appellant asserted the critical path was delayed a total of 146-days due solely to the late dig permit approval (SOF ¶ 31).  Appellant is not seeking separate delay damages for each of the events that occurred between those two dates.  Rather, any compensable delays associated with those events were subsumed within appellant's delay claim resulting from the verbal stop work order until the new start date set forth in the new dig permit (compl. ¶ 80).

In its motion, the government separately discusses each of the seven alleged separate "claims" and attempts to show how each is different and distinct (gov't mot. at 12-17). As discussed above, the government's alleged seven "claims" are really seven separate events that are all part of appellant's single delay claim. The continuing issue in this appeal appears to be the alleged on-going project delay resulting from the stop work order and the revocation of the original dig permit until the government's approval of the new permit and authorization to complete the work. The government's various directions to appellant to submit and modify the dig permit requests, its alleged failure to respond to various dig permit requests, and its alleged failure to give Vertex adequate direction, all relate to this common set of operative facts arising from the original delay. They all arose from essentially interrelated conduct and the same or closely connected facts. *See Jaycor*, ASBCA No. 40911, 91-3 BCA ¶ 24,082 at 120,536, (citing *Walsky Construction Co. v. United States*, 3 Cl. Ct. 615, 619 (1983) ("What is vital is whether the demands arose out of essentially interrelated conduct and services, and the same or closely connected facts.").

**F&D Included A Sum Certain Amount For Its Contract Change Claim**

F&D's claim also asserted an alleged contract change under FAR 52.243-4 (SOF ¶ 32). F&D alleged USACE advised Vertex that the base PWD would allow the road along the north side of the project site to be closed for a maximum period of two weeks (SOF ¶ 32). Previously, the plan was to fully close the road and reroute traffic until the project was completed (SOF ¶ 7). As a result of this alleged contract change, Vertex submitted a redesign for the electrical and telecommunications manholes to comply with the new requirement that road closures during the installation of the electrical and telecommunications utility work not exceed two weeks (SOF ¶ 17).

In its motion to dismiss, the government contends that an assessment of entitlement on appellant's claim for costs associated with the change to the road closure requirements would be considered under the FAR 52.243-4, Changes clause (gov't mot. at 16). A claim based upon the Changes clause would appear to be separate and apart from a claim for delay damages. *See K-Con Bldg. Sys., Inc.* 788 F.3d at 1005 (claims are separate if they are based upon a separate basis for relief and a different legal theory).

Even if the government were correct, which we do not decide here, appellant set out a separate sum certain for that portion of its claim (SOF ¶ 32). Appellant's claim includes two cost items for "Redesign" and "Kooheji Constructors" in the combined amount of $29,302.00 that are its claimed increased costs resulting from the relocated manholes due to the alleged road closure contract change (SOF ¶ 32).[5]

---

[5] Even though F&D did not total these two amounts in its claim, the sum certain requirement is met if the amount "is readily calculable by simple arithmetic."

13

Hence, appellant gave the contracting officer both an adequate basis and amount for the claim associated with the alleged changed road closure conditions to ensure he was given the opportunity to consider and rule on it. *Cont. Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1997). As such, the Board has jurisdiction to consider this claim.

## CONCLUSION

We find the "claims" or "events" relating to appellant's delay claim are all based on a common or related set of operative facts. In addition, we find appellant has provided a separate sum certain for its claim resulting from the government's alleged contract change to the road closure requirements. We conclude the Board has jurisdiction over this appeal. The Government's motion to dismiss is denied.

Dated: April 26, 2023

ARTHUR M. TAYLOR
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

*See PHI Applied Physical Sciences, Inc.*, ASBCA Nos. 56581, 58038, 13 BCA ¶ 35,338 at 173,334. Here, the total amount is easily calculated by adding the two sums together.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63278, Appeal of Fidelity & Deposit Company of Maryland, rendered in conformance with the Board's Charter.

Dated:  April 27, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals